[L. A. No. 1259.   Department Two.—August 15, 1904.]

## MICHAEL F. O'DEA, Respondent, v. J. B. MITCHELL et al., Appellants.

STREET ASSESSMENT—RIGHTS OF PROPERTY-OWNER.—While the property-owner against whom an action is brought to foreclose the lien of a street assessment may demand that all requirements of the law must have been followed, the law itself should not be frittered away by sustaining objections to trivial irregularities and slight negligent omissions of public officers, not including anything material.

ID.—RESOLUTION OF INTENTION—EXPENSE MADE CHARGEABLE ON DISTRICT—SIZE NOT JURISDICTIONAL—LOTS FRONTING ON STREET.—The fact that the resolution of intention declares that the work was "of more than local and ordinary public benefit," and that the expense was made chargeable on a district, the size of such district is not jurisdictional; and the Vrooman Act does not make it mandatory on the city to establish a district of larger area than that of lots fronting on the streets improved.

ID.—OMISSION OF LOTS FROM ASSESSMENT.—Under any view, the omission of lots from an assessment does not make the assessment void.

ID.—WAIVER OF OBJECTIONS TO EXTENT OF DISTRICT.—Parties who have not availed themselves of the remedy provided by the statute by filing written objections to the extent of the district within the time therein provided, to be laid before the council by the clerk, and to be passed upon by the council, and who have allowed the work to progress and be completed, without such objections, cannot thereafter be heard to object to the extent of the district in an action to enforce the lien of an assessment.

ID.—FAILURE TO INCLUDE OTHER LOTS — FOURTEENTH AMENDMENT— VIOLATION NOT SHOWN.—Where there is nothing in the record to show that lots not included in the district should have been in-

cluded therein, and all objections to its extent have been waived, it does not appear that any excessive or unjust burdens were placed upon the lots assessed, in violation of the principle of equality declared by the fourteenth amendment to the constitution of the United States.

ID.—STREET-IMPROVEMENT BONDS—"ESTIMATES" OF ENGINEER — CONSTRUCTION OF STATUTE.—Under section 2 of the Street Improvement Bond Act of February 27, 1893, providing that serial bonds may be issued when the council find, "upon estimates of the city engineer," that the cost will exceed one dollar per front foot, etc., the use of the plural number does not require that the city engineer shall go into detailed "estimates," but the clear meaning of the statute is, that the city engineer should inform the council what his estimate is of the cost of the proposed work per front foot.

ID.—VALIDITY OF BONDS NOT INVOLVED—NOTICE BY OWNER.—The question of the validity of the street-improvement bonds is not involved in an action to foreclose an assessment against an owner who has notified the treasurer in pursuance of the statute that "he desires no bonds to be issued for the assessments on his land."

ID.—CERTIFICATE OF CITY ENGINEER—VALIDITY—ASSISTANCE TO STREET SUPERINTENDENT—CONTENTS IMMATERIAL.—A certificate of the city engineer as to the *quantum* of the grading, and that the work was done in accordance with the lines and grades, is not defective because it does not state that the engineer examined the work or measured it. The engineer is not required by law to make a certificate, except where the owner of the lot does the work. In other cases his certificate is merely to assist the superintendent of streets, who must determine whether the work has been satisfactorily performed; and if the certificate satisfies him, it cannot be defective, and its contents, though recorded, are not material to the validity of the lien.

ID.—LIEN OF ASSESSMENT PARAMOUNT TO PRIOR LIEN OF MORTGAGE.— A lien for public taxes and assessments is upon the property, and is paramount to all liens acquired by personal contract; and the lien of an assessment for a street improvement is superior to the lien of a prior mortgage upon the property assessed.

ID.—CHANGE OF GRADE OF PART OF STREET—APPELLANT NOT INJURED.— Where a petition for the change of grade of part of a street included a majority of the owners of land which at the time of the petition was to be affected by the proposed change, which change was effected prior to the assessment proceeding, its sufficiency, conceding that it can be considered in this case (which is doubtful), cannot be affected by the fact that subsequently the council created a larger district for the purpose of assessment. The owners of lands fronting on such changed grade cannot be injured by having their burdens lightened as against other owners elsewhere in the district, who do not appeal.

ID.—REMEDY BY APPEAL TO COUNCIL.—If the change of grade was
invalid, the grade remained as originally established, and appel-
lants' remedy, on that supposition, would be an appeal to the coun-
cil under section 11 of the Vrooman Act from the acceptance of
the work by the city engineer.

APPEAL from a judgment of the Superior Court of Los
Angeles County. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Hunsaker & Britt, for Appellants.

The creation of a district confined to the lots fronting on
the locality of the work done was in excess of jurisdiction.
Such a district could not be of special benefit. (Vrooman
Act, sec. 3; *Hadley* v. *Dague*, 130 Cal. 207, 220.) The mode
of ordering the improvement prescribed by statute is the
measure of the power. (*Nicholson Pavement Co.* v. *Panter*,
35 Cal. 699.) The certificate of the engineer was insufficient.
(*Frenna* v. *Sunnyside Land Co.*, 124 Cal. 440; *Obermeyer* v.
*Patterson*, 130 Cal. 531.) A mortgage or other encumbrance
imposed upon the property prior to the time fixed by the
statute for the attaching of the lien for a public improvement
takes precedence of such assessment. (*Langsdale* v. *Nicklaus*,
38 Ind. 289; *Joper* v. *Schulmeyer*, 39 Ind. 119, 120; *Cook* v.
*State*, 101 Ind. 466; *State* v. *Ætna Life Ins. Co.*, 117 Ind. 251.)

Frank G. Finlayson, for Respondent.

A failure by the property-owner to file written objections
to the extent of the district within the time required was a
waiver of all objections. (Elliott on Roads and Streets, 2d ed.,
sec. 603; *Young* v. *Sellers*, 106 Ind. 101; *Bryan* v. *Foley*, 17
Ind. App. 629; *Harney* v. *Benson*, 113 Cal. 317, 318.) The
creation of the district was valid. (*German Sav. and Loan
Soc.* v. *Ramish*, 138 Cal. 120.) The certificate of the engineer
was sufficient if satisfactory to the street superintendent.
(*Reid* v. *Clay*, 134 Cal. 209, 215.) The assessment lien is
paramount to the mortgage lien. (*Dressman* v. *Farmers' etc.
Bank.* 100 Ky. 571; *Morey* v. *City of Duluth*, 75 Minn. 221;
*Wabash etc. Co.* v. *Commissioners*, 134 Ill. 400; *Seattle* v. *Hill*,
14 Wash. 487; *German Sav. and Loan Soc.* v. *Ramish*, 138
Cal. 120.)

McFARLAND, J.—This is an action to foreclose the lien of a certain street assessment against lots of defendant Mitchell for certain work done on Sixth Street, between Fremont Avenue and Bixel Street, in the city of Los Angeles. Judgment was for plaintiff in the court below, and defendants appeal from the judgment. We do not think that any of the contentions of appellants for a reversal are maintainable.

No doubt, interested parties sometimes succeed in forcing premature improvements and imposing on lot-owners burdens not at the time called for by the conditions surrounding the property affected. But necessary street improvements can be practically accomplished only by a law under which they can be enforced; and while the property-owner may demand that all material requirements of the law be followed, the law itself should not be frittered away by sustaining objections to trivial irregularities and slight negligent omissions of public officials not including anything material. Such a course would only result in more onerous burdens in the end, for bids for the work would be at higher rates if contractors had to run the hazard of losing all compensation if a little slip in a matter of no material importance would make the assessment void.

1. Appellants contend that all the proceedings upon which the assessment was based were void, because in the resolution of intention to have the work done it is declared that such work was "of more than local and ordinary public benefit," and at the same time the expense was made chargeable on a district which included only the lots fronting on the street. The said resolution really does not show on its face what the district created was; but, at all events, the matter of the size of the district is not jurisdictional. Section 3 of what is known as the Vrooman Act, which is the statutory proceeding relied on by appellants (Stats. 1891, p. 198), is not mandatory on the city council to establish a district of larger area than that of the lots fronting on the streets; it merely provides that when, in the opinion of the council, the contemplated work "is of more than local or ordinary public benefit" the council "*may* make the expense of such work or improvement chargeable upon a district," which shall be declared in the resolution of intention "to be the district benefited by said work or improvement" (*German Sav. and Loan Soc.* v. *Ram-*

*ish,* 138 Cal. 120, and cases there cited); and under any view the mere omission of lots from an assessment does not make the assessment void. (*Buckman* v. *Landers,* 111 Cal. 347.) Moreover, the section provides that "objections *to the extent* of the district" may be made in writing by interested parties within ten days after the expiration of the time of publication of notice; that the clerk shall lay such objection before the council, and the council at its next meeting shall fix a time for hearing the objections; that the clerk shall notify the objectors; that the council shall hear and pass upon the objections, and its decision shall be final and conclusive; that if *the objections be sustained all proceedings shall be stopped,* but if overruled the proceedings shall continue. This is a remedy which the party interested should, at least in the first instance, avail himself of; and appellants not having done so, and having allowed the work to progress and to be completed without objection, cannot now be heard to make the objection which they should have made before the work commenced and at the time and in the manner prescribed in the statute, where the error, if any, could have been corrected. (See cases above cited.) "The aggrieved owner should exhaust the special remedies provided before he applies to the court," and "should not thus sit by and see his property improved and expect to escape the expense." (*Harvey* v *Benson,* 113 Cal. 314.)

2. Appellants contend that the assessment here involved is in conflict with the fourteenth amendment to the constitution of the United States, because lots which should have been assessed were not included in the district, and therefore excessive and unjust burdens were placed upon the lots which were assessed—thus violating the principle of equality; but for the reasons above stated, if for no other, this contention cannot be maintained; appellants having failed to invoke the remedy provided by the statute, are now in no position to assert rights, if any they have, which could have been secured by that remedy. Furthermore, it does not appear in the record in this case that any particular lots or parcels of land not included in the assessment district *should* have been so included; the only thing touching that matter is the general statement in the petition of certain lot-owners, and in the resolution of intention, that the contemplated work was "of

more than local and ordinary benefit." If any other par-
ticular lots had been included, the owners thereof might pos-
sibly have made valid "objections to the extent of the district"
and shown that the lots should not have been included therein.
What is there in the record to show the court that any other
particular lot or area should have been put in the district?

3. By section 2 of an act "to provide a system of street
improvement bonds," approved February 27, 1893, (Stats.
1893, p. 33,) it is provided that the city council may deter-
mine that certain serial bonds may be issued for the payment
of street-work, when the council find "upon estimates of the
city engineer" that the cost will exceed "one dollar per front
foot along each line of the street," etc. In the case at bar
the city engineer reported to the council that "the estimated
cost of said work is $2.95 per front foot," and it is contended
that the whole proceeding is invalid because this report is not
full enough to meet the requirements of the statute—stress
being laid on the use of the plural word "estimates." It is
not entirely clear how this question can arise here, for it
would seem to involve at most only the validity of any bonds
that might be issued in payment of the assessment, and there
is no issue here as to the validity of bonds. The act provides
that if the owner of a lot assessed shall notify the treasurer
that "he desires no bond to be issued for the assessments" on
his land "no such bond shall be issued"; and in the case at
bar appellant Mitchell, the owner of the lots in question, gave
such notice, and no bonds were issued for assessments on his
property. But, under our view, the clear meaning of the
statute is merely that the city engineer, being supposed to
have special knowledge of the subject, should inform the
council what his estimate is of the cost of the proposed work
per front foot. There is no requirement that he shall enter
into details; and there is no warrant for holding the whole
proceeding void because that official did not do something
which the statute does not require him to do.

4. It is contended that the assessment is void because the
certificate of the city engineer, after the work was done, does
not meet the requirements of the law. There is really no ex-
press requirement in the statute that the city engineer shall
make any certificate at all. In section 9 (Stats. 1891, p. 205)
it is provided that "said warrant, assessment, and diagram,

together with the certificate of the city engineer, shall be re-
corded''; but there is no provision requiring him to make a
certificate—except in subdivision 10 of section 7, which ap-
plies only to cases where the owner of the lot does the work.
There is no provision whatever as to the form of the engineer's
certificate, or what it must contain. By section 34 it is pro-
vided that the city engineer is the proper person to render
certain services, but there is no provision that he shall make
any certificate; there is merely a provision that ''every cer-
tificate signed by him'' shall be *prima facie* evidence in the
courts of the truth of its contents; and it has been said in one
or two opinions that the certificate referred to in section 9
is presumably the one mentioned in section 34. But to put
into the statute *by implication,* first, a requirement not there,
that the engineer must make some kind of a certificate, and,
second, the requirement, not there, that the certificate must
be of a certain form or must contain certain things, and then
to hold the assessment void because the engineer's certificate
does not fully comply with these implications, would be, even
as against proceedings *in invitum,* to carry the doctrine of
strict construction beyond all reasonable bounds. Assum-
ing that any certificate is required, the certificate in the case
at bar shows the *quantum* of the grading, and that the work
was done in accordance with the lines and grades; and we do
not think that the assessment is void, as contended by appel-
lants, because there is no express statement in it that the en-
gineer examined the work or measured it, etc. Appellants
rely on the case of *Frenna* v. *Sunnyside Land Co.,* 124 Cal.
437, which was followed in *Obermeyer* v. *Patterson,* 130 Cal.
531. The decision in the Frenna case seems to have been
based mainly upon the ground that the certificate of the city
engineer referred to was based upon another certificate which
was signed by a person who was neither the engineer nor a
deputy; but if it cannot be distinguished from the views
above expressed it must give way to the later case of *Reid*
v. *Clay,* 134 Cal. 207. (In the opinion in this later case, as
published, there is evidently a clerical error; it refers to sub-
division 10 of section 5 of the act, when section 7 is clearly
meant.) By subdivision 10 of section 7 (Stats. 1889, p. 164)
it is provided that the owner may himself do certain street-
work at his own expense, and that in such case he, at his own

expense, must procure a certificate from the city engineer showing the amount of work done, etc., and must file the same with the superintendent of streets, who must record it. In *Reid* v. *Clay,* which was a suit to enforce a street assessment, one of the points made by the appellant, who was defendant in the court below, was insufficiency of the engineer's certificate, and on that point the decision of the court was as follows: "Nor is there anything in the objection to the sufficiency of the engineer's certificate. A certificate of the engineer is not required, except in the case provided for in subdivision 10 of section 5 [7] of the act. He is indeed empowered by section 34 (Stats. 1889, p. 171)—when required—to make a certificate of the work done, and where the certificate is made, it must, under the provisions of section 9, be recorded. But this provision must be construed as requiring its record only in cases where the certificate is in fact made, or is required to be made by section 5 of subdivision 10 [subdivision 10 of section 7]. Where the certificate is made otherwise than in the case provided for in the subdivision cited—it is simply for the purpose of assisting the superintendent of streets, upon whom, by section 8, is devolved the function of determining whether the contract had been satisfactorily performed. It follows that the certificate, if satisfactory to the superintendent, cannot be defective, or, in other words, that its contents are immaterial to the validity of the lien. (*Gray* v. *Lucas,* 115 Cal. 434 et seq.; *Jennings* v. *Le Breton,* 80 Cal. 13, 14; Finlayson on Street Law, 103.)"

5. The appellant Azelia C. Huntington holds a mortgage on the premises owned by defendant Mitchell and covered by the assessment here in question; and she contends that her mortgage lien is superior to that of the assessment lien; but this contention is not maintainable. A lien for public taxes and assessments is upon the property, and is paramount to all liens acquired by personal contract. There is no difference in this respect between taxes for street improvements and general taxes. As is said in *Dressman* v. *Farmers' etc. Bank,* 100 Ky. 571, "Both are levied under the sovereign power of the state, and both are levied under the theory that they are for the general good, and the same general powers for enforcing their collection are given." (See, also, *Morey* v. *City of Duluth,* 75 Minn. 221; *Wilson* v. *California Bank,*

121 Cal. 631; *Odell* v. *Wilson,* 63 Cal. 159; *German Sav. and Loan Soc.* v. *Ramish,* 138 Cal. 120.) In the late case of *German Sav. and Loan Soc.* v. *Ramish,* the rule is clearly stated that the lien of an assessment for street improvement, like the lien of a tax for general purposes, is "superior to all other liens prior or otherwise"; for while in that case the bond act, which expressly provides that the bond shall be a first lien, was involved, still the decision went on the broad ground that an assessment for street improvement was paramount to all other liens.

6. The foregoing are all the points calling for discussion which concern the particular proceeding out of which this litigation arose,—that is, the assessment proceeding. Appellants, however, claim the right to go back and attack another and distinct proceeding, which was for a change of grade of Sixth Street under an amendatory act providing for such change, approved March 9, 1893, (Stats. 1893, p. 89,) which proceeding was inaugurated and completed prior to the said assessment proceeding. Appellants contend that the said proceding for a change of grade was void, and therefore all subsequent assessment proceedings must fail. The statute provides that "no change of an established grade shall be ordered except on petition of the owners of a majority of the property affected by the proposed change of grade." There was a formerly established grade of Sixth Street, and the order for a change of grade in the case at bar was based on the petition for a change of grade of Sixth Street between Fremont Avenue and Bixel Street, and was signed by a majority of the owners of lots fronting on that part of Sixth Street where the grade was asked to be changed. The council determined the petition to be sufficient; but it seems that for the purpose of assessment in relation to this change-of-grade order the council established a district which included a part of Sixth Street and lands adjoining it, where there was not to be any change of grade, and it appears that the original petition did not include the owners of a majority of the area included within the district,—which, of course, was established after the filing of the petition, and after the council had determined the petition sufficient; and appellants' contention is, that because the petition did not include a majority of the owners of land in the district subsequently created for the purpose of assess-

ment, therefore the change-of-grade order and all subsequent proceedings were void. The facts as to this former order for a change of grade, as disclosed by the record, are very meager. It does not appear what the change ordered was—whether it was merely formal and trivial and not substantially affecting the rights of any one, or whether it was of material consequence, it merely appearing that the change was asked to be made in accordance with a certain map, which map does not appear in the record; and it does not appear whether or not any assessment ever followed the order or was enforced or collected.

It is doubtful if the change-of-grade proceeding can be considered at all in this case (see *Wingate* v. *Astoria,* 39 Or. 603, and authorities there cited); but conceding that it can, the contention of appellants for a reversal on account of the former proceeding is not maintainable. In the first place, the petition was sufficient; it included a majority of the owners of land which at the time of the petition was to be affected by the proposed change of grade of that part of Sixth Street as to which the change was asked by the petitioners. Its sufficiency was not affected by the fact that subsequently the council created a larger district for the purpose of assessment. Moreover, how could the owners of lands fronting on that part of the street on which the grade was to be changed, of whom appellant Mitchell was one, be injuriously affected, or in any way aggrieved, or have any of their constitutional rights invaded, because their burdens were lightened by an order which compelled other persons, whether rightfully or not, to share with them the expenses, if any, incident to the mere paper order for the change of grade? Those other persons are not appealing, nor does it appear that they ever made any objections to the order which brought them within the assessment district. Again, if it could be held on this appeal that the order for the change of grade was invalid, then the grade remained as originally established, and appellants' remedy would be an appeal to the council, under section 11 of the Vrooman Act, from the acceptance of the work by the city engineer. (See *German Sav. and Loan Soc.* v. *Ramish,* 138 Cal. 120, and cases there cited.)

The judgment appealed from is affirmed.

Henshaw, J., and Lorigan, J., concurred.