[L. A. No. 3833.   In Bank.—April 1, 1915.]

## M. E. SCHAFFER, Appellant, v. SARAH A. SMITH, as City Treasurer of the City of Watts, Respondent.

STREET ASSESSMENT—RESOLUTION ORDERING DOING OF WORK—POSTING AND PUBLISHING—OMISSION OF CLERK'S CERTIFICATE OF PASSAGE.— The street work act, commonly known as the Vroomon Act, does not require the resolution of the board of trustees of the municipality ordering street work to be done, when posted and published, to contain the city clerk's certificate to its passage, and it is immaterial that the clerk did not sign the certificate until after such posting and publication. The certificate is only evidence on the minutes of the fact that the resolution passed.

ID.—CERTIFICATE OF STREET SUPERINTENDENT TO ASSESSMENTS—ACTING SUPERINTENDENT ALSO CITY ENGINEER.—The certificate to the record of warrants, diagrams, and assessments following upon the contractor's return thereof made by the then acting street superintendent, is not invalidated by the fact that the person making the certificate had previously acted in the proceedings as the city engineer, and had not yet relinquished that office, and that he as superintendent of streets was certifying to acts which had been done by him as city engineer.

ID.—WARRANT—OMISSION OF OFFICIAL SIGNATURE FROM RECORDED WARRANT.—The omission from the warrant as recorded of the signature of the president of the board of trustees is immaterial, if the original warrant contained such signature.

ID.—CONSTITUTIONAL LAW—STREET IMPROVEMENT BONDS—NONISSUANCE OF BONDS—REQUIREMENT OF OWNERSHIP TO BE SHOWN BY CERTIFICATE OF SEARCHER OF RECORDS.—The provision of the Street Improvement Bond Act of February 27, 1893, (Stats. 1893, p. 33; Stats. 1899 p. 41,) requiring the property owner, as a condition for the nonissuance of an assessment bond against his property, to present to the treasurer a certificate made by a searcher of records that he is the owner of record of the property, is not unconstitutional as being the taking of property without due process of law, or for placing upon the property owner a burden above his first share of the expense of the improvement.

ID.—OPPORTUNITY TO AVOID ISSUANCE OF BONDS—CONDITIONS MAY BE ATTACHED.—The legislature is not bound to give the property owner any opportunity to avoid the issuance of bonds further than his opportunity to pay the assessment before the time fixed when it would become delinquent. In extending to him the further privilege whereby he may be subject to the assessment alone and may prevent the issuance of such bonds, any reasonable condition to the

exercise of that privilege may be imposed. The rule requiring him to produce from the records some evidence that he owns the property imposes only a reasonable condition.

ID.—LANDS SUBJECT TO RAILROAD RIGHT OF WAY ARE ASSESSABLE.— Lands subject to a railroad right of way fronting on a street are subject to assessment for the improvement of the street and should be assessed as lands fronting on the street, but excluding from such assessment the easement held for right of way purposes.

ID.—BONDS AS CONCLUSIVE EVIDENCE OF LEGALITY OF PRIOR PROCEED-INGS—REQUISITES OF DUE PROCESS OF LAW—APPORTIONMENT OF ASSESSMENT.—The amendment to section 4 of the Street Improve-ment Bond Act which became effective on June 26, 1911 (Stats. 1911 p. 1204), providing that bonds issued under the act, "shall be conclusive evidence of the regularity of all proceedings thereto under said street work act and under this act, previous to the making of the certified list of all assessments unpaid to the amount of twenty-five dollars or *over by the street superintendent to the city treasurer,* and of the validity of said lien up to the date of said list," does not operate to make the issuance of the bonds conclusive evidence of the regularity of the performance of such of the required steps in the proceedings leading up to the bonds as are necessary to con-stitute due process of law, or to comply with any other constitu-tional prerequisite. One of the essentials, the nonobservance of which cannot be cured, is a uniform assessment or apportionment of the amount to be raised.

ID.—FAILURE TO UNIFORMLY APPORTION AMOUNT OF ASSESSMENTS—OMISSION OF LANDS LIABLE TO ASSESSMENT—ASSESSMENT OF OTHER LANDS VOID—INVALIDITY OF BONDS.—The failure to ap-portion the assessment against the lands fronting on the street subject to the railroad right of way renders an assessment at-tempted to be made against other lands fronting on the street void on its face, and the property owner, in order to avail himself of such objection, is not required to have previously appealed to the city council, as provided in section 11 of the street work act. Such assessment being void on its face, the bonds issued pursuant thereto are also void.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge.

The facts are stated in the opinion of the court.

Crouch & Crouch, for Appellant.

A. R. Holston, and Peebles Shoaff, for Respondent.

THE COURT.—A hearing in the above cause was ordered in this court, after decision by the district court of appeal of the second district.

The opinion of the district court of appeal, written by Mr. Presiding Justice Conrey, is adopted as the opinion of this court. It is as follows:

The plaintiff as owner of certain street improvement bonds transferred to him by a holder who acquired them from Municipal Securities Company (a corporation), to which the bonds had been issued by the city of Watts, brought this proceeding against the defendant as city treasurer, and applied for a writ of mandate commanding defendant to advertise and sell the property described in the petition. The bonds, purporting to be issued as required by an act approved February 27, 1893 (Stats. 1893, p. 33), are alleged to cover said property by lien claimed to exist under assessments made representing the cost of certain street work. From a judgment entered in favor of defendant, plaintiff appeals.

The street work in question was done pursuant to a contract entered into by the superintendent of streets with a contractor, and the proceedings were in form according to the requirements of the street work act, commonly known as the Vrooman Act. The record of these proceedings, so far as necessary to be noted here, begins with a resolution of the board of trustees, adopted on December 28, 1909, and known as resolution No. 123, ordering the work to be done. The bonds are valid, unless their invalidity can be established for at least one of the reasons here presented by the respondent for our consideration.

It is suggested by her counsel that the resolution No. 123, was posted and published without having thereon the city clerk's certificate to its passage, and that the clerk did not sign the certificate until after such posting and publication. Respondent asserts that this was an omission of a legal requirement; but we do not find either in the resolution or in the statute anything which supports the assertion made. The certificate is evidence on the minutes of the fact that the resolution passed, and it is nothing more.

It is further claimed that the warrant and assessment were not certified by the duly appointed street superintendent, and that the original warrant was not signed by the president of the board of trustees. These points cannot be sustained.

The record shows that A. B. Waddingham who, on July 29,
1911, signed the certificate to the record of warrants, dia-
grams, and assessments following upon the contractor's re-
turn thereof, was then acting as street superintendent.  The
only point made against this is that earlier in the proceedings
he was city engineer, and had not yet relinquished that office,
and that he as superintendent of streets was certifying to
acts which had been done by him as city engineer.  No rea-
son is shown why he should not do this.  Upon the objection
that the original warrant was not signed by the president
of the board of trustees, the answer is that the original war-
rant was so signed, although that signature is absent from
the warrant as recorded.  This omission is not material.
(*Gillis* v. *Cleveland*, 87 Cal. 214, 220, [25 Pac. 351].)

Next it is contended that certain provisions contained in
section 4 of the Bond Act are unreasonable and unconstitu-
tional.  That section as amended in 1899, and also in its
original form (Stats. 1893, p. 33; Stats. 1899, p. 41) provides:
"That if any person, or his authorized agent, shall at any
time before the issuance of the bond for said assessment upon
his lot or parcel of land, present to the city treasurer his affi-
davit, made before a competent officer, that he is the owner
of a lot or parcel of land in said list, accompanied by the
certificate of a searcher of records, that he is such owner of
record, and with such affidavit and certificate, such person
notifies said treasurer, in writing, that he desires no bond
to be issued for the assessments upon said lot or parcel of
land, then no such bond shall be issued therefor, and the
payee of the warrant, or his assigns, shall retain his right
for enforcing collection, as if said lot or parcel of land had
not been so listed by the street superintendent."  The argu-
ment for respondent is that the provision requiring the prop-
erty owner to present to the treasurer a certificate made by
a searcher of records is in effect the taking of property with-
out due process of law, and that it places upon the property
holder a burden above his just share of the expense of the
improvement.  In our opinion, the statute does not have
the effect thus claimed.  The legislature has the power  to
provide, as by this Bond Act it does provide, that bonds
shall issue for the amount of a delinquent assessment.  The
legislature is not bound to give the property owner any op-
portunity to avoid the issuance of bonds further than his

opportunity to pay the assessment before the time fixed when
it would become delinquent. In extending to him the fur-
ther privilege whereby he may be subject to the assessment
alone and may prevent the issuance of such bonds, any rea-
sonable condition to the exercise of that privilege may be
imposed. The rule requiring him to produce from the rec-
ords some evidence that he owns the property imposes only a
reasonable condition. The case of *Havemeyer* v. *Superior
Court*, 84 Cal. 327, [18 Am. St. Rep. 192, 10 L. R. A. 627, 24
Pac. 121], cited by counsel for respondent, does not sup-
port their position. After much searching through the
eighty-two pages of that decision, we think that we have
found at page 396 [of 84 Cal.] the reference intended. The
court there holds that where a person is about to be illegally
deprived of his property by another person claiming to act
as receiver, and where the superior court in appointing a
receiver exceeded its jurisdiction, the property owner may
have a writ of prohibition and is not obliged to submit to
the wrong and rely on a long and expensive litigation for
recovery of his property. But the provisions above quoted
in the Bond Act are in their effect confined to proceedings
within the jurisdiction of a city and its officers.

In respondent's answer to the petition herein she alleged,
and the court found, that along the westerly side of Melvin
Avenue, and along the entire length thereof within the north
and south limits of the street work described in said resolu-
tion No. 123, "extends the lands of the Pacific Electric
Railway Company, which lands are used as a part of the
right-of-way of said railway company for its line of railway
from the city of Los Angeles to the city of Long Beach, and
which right-of-way abuts and fronts upon the westerly side
of said Melvin Avenue between said Main Street and Shorb
Avenue, the entire distance." After deducting from the
total cost of the street work certain amounts which were paid
partly by the city out of a street improvement fund obtained
from the proceeds of a municipal bond issue, and partly by
one thousand five hundred dollars voluntarily paid by the
Pacific Electric Railway Company to the city of Watts on
account of said street improvements, the remainder of said
cost (such remainder amounting to much more than half of
the total cost) was assessed solely and only against the lots
and lands fronting on the easterly side of Melvin Avenue

between Main Street and Shorb Avenue. The bonds here in question are based upon this assessment.

Upon the facts above stated, the respondent claims that the land covered by the railroad right-of-way is part of the land fronting on the improved street, and that the assessment is void because the right-of-way land is not included therein; or that if by reason of the principles of law controlling assessments against rights-of-way no interest in this land could be subjected to assessment, then the street could not be improved at all under the street work act. In Pennsylvania it has been held that for the purposes of asserting claims for street paving against the roadbed of a railway company "the distinction between the right-of-way and the fee is a shadowy one." (*Junction City R. Co.* v. *City of Philadelphia,* 88 Pa. St. 424.) In California this point appears to be not definitely decided. In *Southern California Ry. Co.* v. *Workman,* 146 Cal. 80, [2 Ann. Cas. 583, 79 Pac. 586, 82 Pac. 79], it was decided that a railroad right-of-way could not be sold under a street work assessment. With respect to the question now under consideration, the statute applicable to this work on Melvin Avenue was the same as that under which the case last mentioned was determined. At that time the legislature had not provided for such sales of rights-of-way. In that decision the supreme court declined to decide whether or not the fee or reversion in right-of-way land could be assessed, as it held that the proceeding there was merely "for the purpose of enjoining a sale of plaintiff's right-of-way,—that is to say, its easement." In *Fox* v. *Workman,* 155 Cal. 201, 204, [100 Pac. 246], referring to the same proceedings as in the earlier case, the court again found that the question of right to assess the fee separately from the right-of-way was not involved, and said: "The court did not, therefore, in the former decision, determine that the fee, subject to the easement, could not be, or that it had not been assessed. The judgment there affirmed merely declared that the bond created no lien upon the right of way. It could not bar plaintiff's right to have the fee, subject to such easement, sold. . . . Here the plaintiff, having at most a right to compel the sale of the fee, subject to the easement, made a demand for a sale of property described in terms covering both fee and easement. The officer was justified in refusing to comply with this excessive demand,

and no liability for damages accrued upon such refusal.''
If the case of *Fox* v. *Workman* does not carry an intimation
that lands subject to a railroad right-of-way, as were the
lands of the Pacific Electric Railway on the west side of
Melvin Avenue, are subject to assessment and should be as-
sessed as lands fronting on the street, but excluding from
such assessment the easement held for right-of-way purposes,
we are at least left free to deal with the subject as an undeter-
mined matter. From the record in this case we are unable
to say that the right-of-way over the land in question is
complete either in the sense of being perpetual, or of being
such as to necessarily require the company to continue to
occupy the whole thereof in the operation of its railroad.
This land abutting upon the street, although subject to such
right-of-way, may have a substantial value to the owner of
the fee. Our conclusion is that, while the right-of-way can-
not be assessed, the land itself is land fronting upon the
street within the meaning of the street work act, and under
the limitations defined is subject to assessment.

But is is suggested on behalf of appellant that the prop-
erty owners aggrieved by the assessment as it was made did
not, within the time required by law, appeal to the board of
trustees from the assessment, and that since they did not so
appeal the assessment became final and is not further sub-
ject to attack on account of the alleged errors. The statute
declares that no assessment shall be held invalid, except upon
appeal to the city council as provided in section 11 of the
street work act, [Stats. 1885, p. 156], for any error, infor-
mality, or other defect in any of the proceedings prior to
the assessment, or in the assessment itself, where notice of
the intention of the city council to order the work to be done
has been published in accordance with law.

Appellant further calls attention to the fact that on June
26, 1911, four days before issuance of the warrant of assess-
ment in the case at bar, there became effective an amendment
to section 4 of the Street Improvement Bond Act, providing
that bonds issued thereunder ''shall be conclusive evidence
of the regularity of all proceedings thereto under said street
work act and under this act, previous to the making of the
certified list of all assessments unpaid to the amount of
twenty-five dollars or over by the street superintendent to
the city treasurer, and of the validity of said lien up to the

date of said list.'' (Stats. 1911, p. 1204.) In *Chase* v.
*Trout,* 146 Cal. 350, [80 Pac. 81], the supreme court declared
its interpretation of the meaning of the conclusive evidence
clause as formerly contained in the same section of the stat-
ute. Without repeating at length the principles there set
forth, we find the decision in substance to be that under the
quoted clause of the statute the issuance of the bonds shall
be conclusive evidence of the regularity of the performance
of all the required steps in the proceedings leading up to the
bonds, excepting those that are necessary to constitute due
process of law, or to comply with any other constitutional
prerequisite. Answering the question as to what are the
essentials the nonobservance of which cannot be cured, one
item specified is that there must be an assessment or appor-
tionment of the amount to be raised. The court there calls
attention to the fact (citing *Bolton* v. *Gilleran,* 105 Cal. 244,
[45 Am. St. Rep. 33, 38 Pac. 881]) that power could not be
given to the street superintendent to change the amount of
the contract price and of the assessment. Such attempted
plan would be beyond the reach of a curative provision, be-
cause it would give power to that officer to improve the
street and levy an assessment without a substantial compli-
ance with the constitutional conditions. After pointing out
some of the objections made to the proceedings in that case,
the court said: ''All of them relate to the manner of the
work and the method of procedure to get it done, and not
to the subjects of the notice to the owners, the hearing of
grievances, the fact that work was done, nor *to the existence
of a uniform asssessment.''*

But in the case at bar the claim is, under the facts to which
we have referred, that the attempted assessment made wholly
against the lots on the easterly side of Melvin Avenue is not
a uniform assessment, and that on its face it shows a willful
failure to make an assessment according to the plan pro-
vided by law. We think this claim should be sustained, and
that the assessment belongs to that class where the owner
may, without appealing to the city council, resist the enforce-
ment of the assessment because it is void on its face. In
*Perine* v. *Lewis,* 128 Cal. 236, 241, [60 Pac. 422], referring·
to an assessment made upon a plan not in accordance with the
law and which resulted in assessing certain lots in double the
right amount, the court said: ''As the objection did not re-

quire extrinsic evidence for the purpose of establishing the fact, but the assessment appeared upon its face to have been made in violation of the statute, the defendants are not precluded from making the objection without having previously appealed to the board of supervisors." To the same effect is *Kenny* v. *Kelly,* 113 Cal. 364, [45 Pac. 699]. In *San Diego Investment Co.* v. *Shaw,* 129 Cal. 273, [61 Pac. 1082], no question was raised with respect to the right of the property owner to resist the enforcement of a street assessment lien for irregularities that might have been passed upon by the city council, but it was there directly decided that where the whole cost of certain street grading work was apportioned and assessed against the lots fronting on one side of the street, when according to the statute both sides should have been assessed, the assessment was void and the lien claimed thereunder could not be enforced.

Since the assessment in the present case was void upon its face, and since the bonds issued pursuant to such assessment were also void, it follows that no duty has devolved upon the defendant city treasurer to foreclose those bonds or sell the property described therein. This being so, the appellant is not injured or aggrieved by the affirmative part of the judgment which directs that defendant cancel of record the bonds and assessments described in plaintiff's petition."

The judgment is affirmed.

Rehearing denied.