[L. A. No. 3998. In Bank.—October 8, 1917.]

PHILIP L. WILSON, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant; UNION TRUST COMPANY OF ST. LOUIS, MISSOURI (a Corporation) et al., Defendants.

STREET IMPROVEMENT LAW—FORECLOSURE OF ASSESSMENT LIEN—RAILROAD PROPERTY—USE FOR PUBLIC PURPOSES—INSUFFICIENCY OF EVIDENCE.—In this action to foreclose a lien for street improvements assessed against railroad property, the evidence is examined and held insufficient to sustain a finding that certain land included in the assessment district was not used for public purposes.

ID.—INVALID SALE OF RAILROAD RIGHT OF WAY.—Prior to amendment of the general street law by Statutes of 1911, p. 742, section 20, subdivision 11, while land of a railroad company might be assessed to pay for work upon an abutting street, there was no authority to sell, in foreclosure of the lien, both the fee and the right to operate the railroad.

RAILROADS — RIGHT OF WAY OF RAILROAD DEFINED. — The right of way of a railroad company is not the mere right to operate trains over lands, and cannot arbitrarily be confined to an easement on just enough lands for running trains.

ID.—EASEMENT—MERGER OF RIGHT OF WAY IN FEE.—Where the fee of land rests in a railroad company, a "right of way," in its technical sense, over the land is merged in the fee, as no person may have an easement in land owned by himself.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner, A. W. Ashburn, Jr., and W. R. Millar, for Appellant.

Tanner, Odell, Odell & Taft, for Respondent.

MELVIN, J.—Plaintiff sued successfully to foreclose a lien for improvement of a street against certain property of the Pacific Electric Railway Company situated in the city of Venice. The railway corporation appeals from the judgment and from an order denying its motion for a new trial.

The court found, partly upon the testimony of witnesses and partly upon stipulation of the parties, that prior to the twenty-third day of June, 1909, the Los Angeles Pacific Company, appellant's predecessor in interest, was the owner and in possession of that strip of land in the city of Ocean Park, now Venice, which now constitutes a portion of Sereno Street, extending from the southerly line of Elena Avenue to the southerly line of Rose Avenue; that prior to that time and pursuant to an agreement in writing carried into effect by an ordinance of the municipality the Los Angeles Pacific Company and the city exchanged certain properties; and that deeds were duly delivered by which, among other things, title to the land now occupied by the part of Sereno Street here involved, together with other adjoining property, passed from the Railroad Company to the city. The city, in the contract, in the ordinance, and by acceptance of the deed with appropriate covenants to express that purpose, agreed to defray all expenses of opening and improving and maintain-

ing streets over or across the lands deeded to it by the Railroad Company and that said company should never be compelled as an abutting owner or as the proprietor of property within an assessment district to pay any assessment for opening, improving or maintaining such streets. By the city's deeds to the Railroad Company the latter became the owner in fee of land which, when added to other property possessed in like tenure, formed a continuous strip ninety-five feet in width, occupied in part by its tracks. Sereno Street as it now exists is parallel to this strip and adjoins it.

Less than six months after the acceptance by the city of the deed from the Railroad Company a proceeding to open said Sereno Street was instituted and in October, 1910, an assessment for the improving of said street was levied upon a portion of the strip of land owned by the said railroad corporation. The assessment was by metes and bounds and embraced the southerly part of the strip of land adjacent to Sereno Street and forty-seven feet in width, including part of that acquired from the city and part of the property previously owned by the Railroad Company. Appellant pleaded in its answer that the property thus assessed was part of its right of way. The court found that this allegation was untrue and that the land had never been devoted to public use. There were further findings to the effect that the property was legally assessable for the improvement of Sereno Street and the lien of plaintiff, an assignee of a street contractor who performed work on said street, was held to be valid in every respect.

Appellant asserts that the findings upon which the judgment is predicated are wholly unsupported in that the evidence and stipulations compel the conclusion that a railroad right of way was assessed; that prior to the amendment of the "Vrooman Act" in 1911 such an assessment was void; and that the assessment was illegal also because it was levied in violation of the conditions upon which the city acquired title to the land over which the street was opened.

Mr. Ashburton, a civil engineer, in the employ of appellant, testified that the strip of land ninety-five feet wide belonging to the Railroad Company was fenced upon its northerly and southerly sides; that an average of forty or forty-five feet was occupied by rails although at one end the track curved in such manner as to extend almost all the way

across the strip; that at the time of the assessment there were some few small houses on the property between the main tracks and the site of Sereno Street; and that the north boundary line of the assessment district did not encroach upon the land actually used by the Pacific Electric Railway Company for its tracks.

Mr. Bugbee, another witness, testified in part as follows: "This particular parcel of the right of way, i. e., the ninety-five foot strip, was the old Santa Fe right of way running into Inglewood and into Santa Monica. It has been in use for a good many years as a freight line, with the exception that our Inglewood passenger traffic we handled on that line." Counsel thereupon stipulated that the part of defendant's right of way upon which the tracks are laid is and has been at all times used for purposes of traffic. Witness said that the four small houses or "shacks" had been used for a section camp and for storing materials. Later on he said he rented them "just to keep them occupied and get what revenue we could out of them until after the road was standardized." The witness testified that after the land formerly owned by the city had been added to that of the defendant company it had been used for industrial purposes. Those purposes he explained as follows: "By that I mean in the handling of material such as building materials, fuel, feed, and things of that kind. In order to be economically handled, they have got to be on a spur-track and we have put in spur-tracks in here to serve the industries, and I think we have two at the present time, but I would have to verify that by reference. There are two fuel and feed yards there at the present time. They are occupied by lessees of the Pacific Electric Railway Company. We have spur-tracks in there to reach them, and are serving them with those spur-tracks." He further gave it as his opinion that the whole of the strip ninety-five feet wide was necessary for the present and future purposes of the company. "The United States government," said the witness, "recognizes two hundred feet." He also said that the small buildings or "shacks" formerly on the southerly portion of the land had been removed.

Mr. Crawford, the only witness called by the plaintiff, described the running of the line by which the northern boundary of the assessment district was fixed. He testified

partly as follows: "My instructions were not to include any property in the district only what was covered by the buildings, such as houses, shacks.

"We measured the distance of those houses from Sereno Street. We did not include in the assessment any land upon which was situated tracks belonging to the defendant company. We ran the assessment, I think, forty-seven and some fraction feet from Sereno Street, as now situated. I couldn't say how far away that would be from the nearest track. We measured up the buildings, houses, and included property that had the buildings on. I suppose we left more land behind the buildings next to the track in some places than in others. At Elena Street I think it was about six or eight feet. I don't just remember what it was."

He also said: "There were some poles supporting wires within the territory included in the assessment district. I don't know whether they belonged to the defendants in this action or someone else. The poles were standing. I couldn't say whether they were parallel with the tracks. They were not connected with the trolley wires. . . .

"There was no track upon the forty-seven feet, which I have described, belonging to the Railroad Company. I don't know whether there were any piles of lumber, brick, or anything of that nature upon the forty-seven foot strip."

Appellant insists that this testimony utterly fails to sustain the finding that the strip of land included in the assessment district was not, and had not been, used for public purposes. We think it clear that the court arbitrarily determined that the Railroad Company's "right of way" consisted only of the land occupied by the tracks with sufficient clearance for the convenient passage of the rolling stock. There was no investigation of the amount of business transacted by the railroad. There was no inquiry regarding the necessities of the company in the matter of space for loading and unloading commodities. There was no estimate of the probable future requirements of space, but one of the witnesses stated that an additional track would soon be necessary for the business. That a part of the assessed land had been used for railroad purposes is clear, and there was uncontradicted testimony that the strip, ninety-five feet wide, was below the average of width of similar land devoted to railroad pur-

poses. The segregation of this property as not a part of the appellant's right of way had no proper basis. It was not sufficient that the actual traffic could be operated over the tracks without the constant use of the land within the Railroad Company's fences. At least that portion of the assessed strip which had been a part of the railroad's property before the acquisition of the land from the city had been devoted to various railroad purposes. Therefore the finding attacked by appellant was not supported by the evidence.

The question then is, whether or not, under the law existing at the time this assessment was levied, a lien could be foreclosed as decreed in this case. It is to be remembered that this assessment was levied prior to the amendment to the general street law expressly authorizing the assessment of rights of way and subjecting them to sale for nonpayment of assessments. (Stats. 1911, p. 742, sec. 20, subd. 11.) Therefore this case is to be determined according to the principles announced by such authorities as *Southern California Ry. Co.* v. *Workman,* 146 Cal. 80, [2 Ann. Cas. 583, 79 Pac. 586, 82 Pac. 79], and *Fox* v. *Workman,* 155 Cal. 201, [100 Pac. 246]. In this case as in those the question was not whether the fee, subject to the easement for right of way, might or might not be sold for satisfaction of an assessment, but whether or not a sale by metes and bounds of all the Railroad Company's interests, including a part of the right of way, could be enforced. Following those authorities we must answer the question in the negative. In *Schaffer* v. *Smith,* 169 Cal. 764, [147 Pac. 976], the two cases in which Workman, treasurer of Watts, was defendant were cited and it was again said that while the property of a railroad company may be assessed to pay for work upon an abutting street, there was no authority to sell in foreclosure of the lien both the fee and the right to operate the railroad.

The "right of way" of a railroad company is not the mere right to operate trains over tracks, and cannot arbitrarily be confined to an easement over just enough land for running trains. The criterion is the land actually occupied and reasonably necessary for use by the common carrier. For this reason spur-tracks and very short lines have been held to be instruments for public use of land.. (*Madera Ry. Co.* v. *Raymond Granite Co.,* 3 Cal. App. 668, [87 Pac. 27].)

Where, as in this case, the fee of the property rests in the Railroad Company, the "right of way" denoting in its technical sense the tenure by which the land is held is merged in the fee, as no person may have an easement in land which he himself owns. (*San Pedro etc. R. R. Co.* v. *Pillsbury,* 23 Cal. App. 675, [139 Pac. 669, 671].) The sale contemplated by the foreclosure was of all of appellant's interest, and, as we have seen, at the time of the attachment of the lien there was no authority for such a disposition of at least a portion of the land included in the assessment district and devoted to railroad purposes.

As the judgment and order must be reversed for the reasons given above, it will not be necessary to decide the other question involving the force of the city's agreement not to assess its vendee. Respondent insists that *McNeil* v. *City of South Pasadena,* 166 Cal. 153, [48 L. R. A. (N. S.) 138, 135 Pac. 32], is decisive of the whole matter, but appellant is equally positive that where two modes of paying for street improvements are possible, one by assessment under the Vrooman Act [Stats. 1885, p. 160] and another by resort to funds in the city treasury, the municipality may, as a part of the consideration for property purchased, agree to forego the former method. Under the circumstances, it. is not necessary for this court in the present appeal to decide this very interesting question.

The judgment and order are reversed.

Henshaw, J., Lorigan, J., and Victor E. Shaw, J., *pro tem.,* concurred.

ANGELLOTTI, C. J., Dissenting.—I dissent.

I am of the opinion that the evidence is sufficient to support the conclusion of the trial court that no part of the assessed portion of the land owned in fee by the railroad company, the greater part of which admittedly was used for purposes in no way connected with the railroad, such as being leased to private parties for other purposes, was ever devoted to railroad purposes, and that none of such assessed portion ever constituted a part of the railroad right of way.

As to the other objection made by appellant, I think the case clearly falls within the principle of *McNeil* v. *City of*

*South Pasadena,* 166 Cal. 153, [48 L. R. A. (N. S.) 138, 135 Pac. 32].

I think the judgment should be affirmed.

Shaw, J., and Sloss, J., concurred with Chief Justice Angellotti.

Rehearing denied.