[Civ. No. 2522.   Fourth Appellate District.—March 29, 1940.]

E. M. SHANNON, Appellant, v. JERRIE WILSON et al., Defendants; LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Respondents.

Harmel L. Pratt for Appellant.

Gibson, Dunn & Crutcher, Woodward M. Taylor and Keith Bullitt for Respondents.

GRIFFIN, J.—This is an action to foreclose a street improvement bond which was issued in November, 1927, under the Improvement Act of April 27, 1911, as amended. The lot in question, lot B of tract 6116, is located in the city of Los Angeles, is rectangular in shape, being approximately 80 feet wide and 30 feet deep. Adjoining the lot on the rear and along its 80-foot width is the right of way of the respondents Los Angeles Railway Company and Los Angeles Railway Corporation, over which street cars are operated. The right of way is 30 feet wide and is atop an embankment approximately 14 feet high. The slope supporting the railway right of way extends over practically the entire surface of lot B. The respondents' right to erect and maintain such embankment over lot B arises from the provisions of two deeds. One is dated October 23, 1903, and grants to respondent Los Angeles Railway Company the right of way just south of lot B "together with the right to construct and maintain on land adjoining the above described strip of land on the Northerly and Southerly sides thereof such additional lands as may be necessary to occupy in the construction of a road bed twenty seven feet in width with side slopes of one and one-half feet horizontal to one foot vertical". The other deed is dated October 17, 1913, and among other things, conveys "The right and easement to retain and maintain the fill and embankment which second party has heretofore constructed and which now exists . . .", referring to the embankment upon lot B in question.

The complaint is in the usual form for the foreclosure of street improvement bonds. It contains allegations of default in payments provided in the bond; that defendant Jerrie Wilson is the owner of lot B, and that the respondents claim

some right, title or interest therein, but that such claims are subject and subordinate to the lien of the bond.

An answer was filed by the respondents which admitted all of the allegations of the complaint, except that it denied that the bond is a lien upon lot B or upon the interest or estate of said respondents in said lot. The answer further set forth that the defendants' interest in that lot "is an easement and right of way for an electric street railway and for the retention and maintenance of the fills and embankments upon said land, all of which are created". There is a further allegation that such "interest and estate is prior and superior to the alleged lien of said street improvement bond".

The court made findings in which the deeds above referred to were set out in full except for the descriptions of property, and the interest and estate of said answering defendants was found to be superior to the lien of the bond. It was further found "that upon the assessment roll and diagram . . . the real property described in said complaint and in said bond, is separately delineated, described and assessed as Lot B, Tract No. 6116 . . . Said interest and estate and slope embankment was not nor was said southerly 25 feet of said Lot B upon which was located and maintained said slope embankment separately delineated, described, assessed or numbered in said assessment roll and diagram"; that respondents "did not, . . . make any objection to said assessment . . . prior to or at the time and place set for hearing objections to said assessment roll and diagram, or at any other time or place, nor did said defendants . . . appeal to the City Council of the City of Los Angeles . . . in regard thereto, as provided in the Act of the Legislature under which said bond was issued". In addition thereto the court further found "said slope was constructed in 1903, is approximately 10 feet in height, and ever since its construction has extended over, upon and covered the southerly 25 feet of said Lot B, and said slope is clearly visible and has been maintained and used to support the said right of way since the time of its construction in 1903".

The decree of foreclosure of the bond was entered and the property ordered sold "subject to the lien, claim or easement" of the respondents. The appeal is from this latter provision of the decree of foreclosure.

The whole question involved is whether, upon the sale under foreclosure of a street improvement bond, where no question is raised as to the legality of the bond, the land described in the bond is sold free and clear of easements and physical servitudes when the easement and physical servitude in question is an integral part of a railroad right of way, consisting of the right to construct and maintain a slope embankment for the support of the adjoining railroad right of way atop the embankment created in the year 1903 and which has been maintained and used and has been perfectly visible ever since that date and which was not separately delineated, described, assessed, or numbered in the assessment roll and diagram as prescribed by the improvement act under which said bond was issued. It is thus seen that the easement for the construction and maintenance of the embankment slope on lot B is an integral part of the respondents' railroad right of way easement atop the adjoining embankment upon which the tracks are laid and should be considered as such.

The term "right of way", as applied to railroad easements, is not confined to the mere right to operate trains over tracks and cannot arbitrarily be confined to an easement over just enough land for running trains. The term includes all adjoining grounds covered by the easement and reasonably necessary for such use. (*Wilson* v. *Pacific Ry. Co.*, 176 Cal. 248, 253 [168 Pac. 128].)

Appellant argues that as a taxing power operates not upon any interest in real property, nor against any person or corporation, but on the *res,* the land itself, it necessarily follows that in the case of a sale of real property upon foreclosure of a tax or assessment lien, the property must be sold freed of all encumbrances, liens and interests of whatever nature, and that the purchaser obtains a paramount title, citing *California L. & T. Co.* v. *Weis,* 118 Cal. 489 [50 Pac. 697]; *German Savings etc. Soc.* v. *Ramish,* 138 Cal. 120 [69 Pac. 89, 70 Pac. 1067]; *O'Dea* v. *Mitchell,* 144 Cal. 374 [77 Pac. 1020]; *Chase* v. *Trout,* 146 Cal. 350 [80 Pac. 81]; *Woodill & Hulse Elec. Co.* v. *Young,* 180 Cal. 667, 670 [182 Pac. 422, 5 A. L. R. 1296]; *Lee* v. *Silva,* 197 Cal. 364, 372 [240 Pac. 1015], and that accordingly in applying the principles of these cases to the case at bar the trial court erred in ruling that the easement or right of way of the respondents was not subject to the lien of the bond. It is further

contended that respondents' failure to appeal to the city council, if it ever had any objection to the correctness of the assessment or diagram, was fatal and was in fact an acceptance of the assessment as levied, and that respondents might well have had the city council assess separately, not the easement, but the 25 feet of lot B which is covered by their embankment, had they made a timely appeal to the city council; and that not having done so, they may not now make such an objection, citing subdivisions 21, 26 and 66 of the Street Improvement Act of April 27, 1911; *Hollywood Cemetery Assn.* v. *Powell,* 210 Cal. 121, 129 [291 Pac. 397, 71 A. L. R. 310], and *Chase* v. *Trout, supra.*

Respondents, in answer to appellant's contention, maintain (1) That their easement is an integral part of their public utility street railroad right of way and as such has become impressed with a public use and cannot be sold for a delinquent assessment unless it has been assessed in the manner and form prescribed by the Improvement Act of 1911, under which appellant's bond was issued, citing section 20, subdivision 11, and section 23 of the Improvement Act of 1911 (Stats. 1911, 730, at pp. 742 and 744); *McNeil* v. *City of South Pasadena,* 166 Cal. 153, 155 [135 Pac. 32, 48 L. R. A. (N. S.) 138]; *Wilson* v. *Pacific Elec. Ry. Co.,* 176 Cal. 248, 253 [168 Pac. 128]; *Schaffer* v. *Smith,* 169 Cal. 764, 770 [147 Pac. 976]; *Los Angeles Pacific Co.* v. *Hubbard,* 17 Cal. App. 646, 651 [121 Pac. 306]; *Rutledge* v. *City of Eureka,* 195 Cal. 404 [234 Pac. 82]; *Cowart* v. *Union Paving Co.,* 216 Cal. 375, 383 [14 Pac. (2d) 764, 83 A. L. R. 1185]. (2) That respondents' easement is neither a "lien" nor an "encumbrance" upon lot B, but is a visible, physical servitude attached to the lot and cannot be extinguished except in the manner prescribed by law and which, until so extinguished, constitutes a specific estate and species of property transferable like any other property, citing sections 2872, 2873, 2874 and 2875 of the Civil Code; section 1180 of the Code of Civil Procedure; section 1114, Civil Code; *Weber* v. *McCleverty,* 149 Cal. 316, 320 [86 Pac. 706]; *Sisk* v. *Caswell,* 14 Cal. App. 377 [112 Pac. 185]; *Ferguson* v. *Edgar,* 178 Cal. 17 [171 Pac. 1061]; *McCarty* v. *Wilson,* 184 Cal. 194 [193 Pac. 578]; *Jaques* v. *Tomb,* 179 Cal. 444, 446 [177 Pac. 280]; *Wetzler* v. *Patterson,* 73 Cal. App. 527, 537 [238 Pac. 1077]; *Baldwin* v. *Stewart,* 218 Cal. 364, 370 [23 Pac. (2d)

283]; *Smith* v. *Smith,* 21 Cal. App. 378 [131 Pac. 890]; *Tidewater Pipe Co.* v. *Bell,* 280 Pa. 104 [124 Atl. 351, 40 A. L. R. 1516]; *Tax Lien Co. of New York* v. *Schultze,* 213 N. Y. 9 [106 N. E. 751, Ann. Cas. 1916C, 636, L. R. A. 1915D, 1115]; *Blenis* v. *Utica Knitting Co.,* 73 Misc. 61 [130 N. Y. Supp. 740, 747, 748]; *Jackson* v. *Smith,* 153 App. Div. 724 [138 N. Y. Supp. 654]; *Poetzsch* v. *Mayer,* 115 Misc. 422 [189 N. Y. Supp. 695]; *Hutchings* v. *Campbell, etc.,* (1924) 2 Dom. L. R. 299; *Crawford* v. *Senosky,* 128 Or. 229 [274 Pac. 306]; *Thompson* v. *Clark,* 6 Cal. (2d) 285 [57 Pac. (2d) 490].

Prior to the enactment of the 1911 Improvement Act practically all street improvement work was done and assessments therefor were levied under the Vrooman Act (Stats. 1885, p. 147), and bonds to secure such assessments were issued under the Improvement Bond Act of 1893 (Stats. of 1893, p. 33). Up to 1911, neither of those acts contained any express authority to levy an assessment upon or issue a bond against railroad property. In *Southern California Ry. Co.* v. *Workman,* 146 Cal. 80 [79 Pac. 586, 82 Pac. 79, 2 Ann. Cas. 583], decided in 1905, the Supreme Court said: "There is no authority for making an assessment upon a right of way or for selling the same." (See, also, *Fox* v. *Workman,* (1909) 155 Cal. 201 [100 Pac. 246].) It therefore seems quite apparent that as a result of the decisions in the two Workman cases, *supra,* the Improvement Act of 1911 was enacted with section 20, subdivision 11 (now sec. 20j, Deering's Gen. Laws, 1931, Act 8199, p. 4537) expressly authorizing and directing the separate assessment of railroad right of way easements in the same manner as other property. Section 20, subdivision 11, in addition to providing that wherever the words "lot, lots, lands, piece or parcel of land" are mentioned in the act, they shall be deemed also to include a street railroad right of way, further provides that: "whenever a railroad, street or interurban railroad right of way shall . . . be included within any district to be assessed for the cost of any improvement provided in this act, such railroad right of way (whether the same is owned in fee or as an easement) shall be included in the warrant, assessment and diagram and shall be assessed in the manner and with the same effect as other lots, lands or pieces or parcels of land are assessed as provided in this act, and such

railroad, street or interurban railroad right of way shall be subject to sale for nonpayment of assessments as in this act provided.''

At the same time the Improvement Act of 1911 was enacted, the Vrooman Act was amended (Stats. 1911, pp. 626, 630) by adding subdivision 11 to section 7, thus making that section of the Vrooman Act read substantially the same as section 20, subdivision 11, of the Improvement Act of 1911. Therefore there can be little doubt under the Improvement Act of 1911 that a railroad right of way easement, in order to become subordinated to the bonds, must be separately assessed in the same manner as the lots and portions of the lots within the district. That a railroad right of way may be separately assessed and sold under foreclosure sale is no longer open to conjecture. (*Rutledge* v. *City of Eureka, supra; Cowart* v. *Union Paving Co., supra; Wilson* v. *Pacific Elec. Ry. Co., supra; Los Angeles Pacific Co.* v. *Hubbard, supra.*) Subdivision 10, section 20, of the 1911 Improvement Act provides that the city engineer shall make a diagram of the property benefited by the improvement and to be assessed and shall ''show each separate lot, piece or parcel of land . . . within the limits of the assessment district''.

As section 20, subdivision 11 provides that the term ''lot, lots, lands, piece or parcel of land'' shall include a railroad right of way and that such right of way shall be assessed in the same manner and with the same effect as other lots, etc., said right of way must be read into the above-mentioned section 20, subdivision 10, which prescribes that where an assessment is to be placed upon a district each ''lot, piece or parcel of land'' within the district must be included in the diagram and be assessed.

As section 23 of the act provides that the several amounts assessed shall be a lien upon the ''land, lots, or portions of lots assessed'' and as the term ''land, lots, etc.'', includes railroad rights of way it seems clear to us that in order to impress the lien upon either lots or railroad rights of way over lots or portions of lots it is obligatory that said lots and rights of way, respectively, shall be separately assessed and the warrant, assessment, and diagram showing the assessments shall be recorded in the office of the superintendent of streets and that when so recorded the lots, portions of lots and railroad rights of way become impressed with the lien

and are subject to the bonds. Accordingly, the plain intent, purpose and meaning of section 21 and subdivisions 10 and 11 of section 20 is that when either lots or railroad rights of way (whether owned in fee or as an easement) are included within the assessment district each must be separately assessed, given a separate assessment number, both on the diagram and on the assessment roll, and must be given a separate description and a separate assessment on the roll in order that said lot or right of way may become impressed with the assessment lien. Otherwise there is no compliance with the requirement of subdivision 11 that the railroad right of way "shall be assessed in the manner and with the same effect as other lots".

It therefore follows in accordance with the findings of the court that the lien described in section 23 of the act never attached to said right of way easement, and as there was no assessment placed upon the easement involved herein, the conclusion is irresistible that the lien of plaintiff's bond is not impressed thereon, and upon a foreclosure of the bond the sale must be made subject thereto.

■ In view of the statutory provision relating to the assessment of a railroad right of way and the cases cited by respondent, we are convinced that such a right of way as here described may not rightfully be classed as a lien or incumbrance under sections 66, 75 or 76 of the act which read in part as follows: The purchaser's deed "conveys to the grantee the absolute title to the lands described therein . . . free of all *encumbrances,* except the lien for state, county and municipal taxes", and that the assessment "shall be a *first lien* upon the property affected".

■ No duty devolved upon respondents to see that the city council assessed their right of way easement in the manner prescribed by subdivision 11 of section 20 of the act because the necessity of following that method was a prerequisite to acquiring jurisdiction to make the assessment. Consequently, the respondents were entitled to rest secure in the knowledge that until such jurisdiction had been obtained by the assessing authorities following the requirement of the act, their easement could not be subjected to the assessment. The cases cited by appellant to the effect that a failure to appeal to the city council and object to the correctness of the assessment or diagram constitutes an accept-

ance of the assessment as levied are not applicable. The contentions of respondent as presented are approved and the determination of the trial court was judicious and must be upheld.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1940.