[S. F. No. 4832.  In Bank.—December 6, 1907.]

# BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO, Petitioner, v. EDWARD HYATT, as Superintendent of Public Instruction, Respondent.

PUBLIC SCHOOL—EVENING HIGH SCHOOLS.—Section 6 of article IX of the constitution by enumerating the various classes of schools of the public school system and making evening schools a distinct class in this enumeration should not be construed so as to prevent a school from having the *status* of a high school merely because its sessions are held in the evening.

ID.—STATE HIGH SCHOOL FUND—SCHOOLS ENTITLED TO BENEFITS—SAN FRANCISCO EVENING HIGH SCHOOL.—Under section 5 of the act of March 6, 1905, limiting the benefits of the state high school fund to high schools that " have been organized under the laws of the state, or have been recognized as existing under the high school law of the state," an evening high school established in the year 1897 by the board of education of the city and county of San Francisco, in pursuance of the power conferred upon them by the act of April 1, 1872, notwithstanding it was not organized pursuant to an election held under the provisions of section 1670 of the Political Code, is one " organized under the laws of the state," and the effect of the act of March 15, 1901, and the amendment of the year 1905 to section 1671 of the Political Code, is to make such school one " recognized as existing under the high school laws of the state."

ID.—BOARD OF EDUCATION—ESTABLISHMENT OF HIGH SCHOOL—ACT OF APRIL 1, 1872.—The act of April 1, 1872, giving the board of education of the city and county of San Francisco power " to maintain public schools as now organized in said city and county and to establish additional ones as required," etc., gave it the authority to establish high schools.  That act, having been passed before the adoption of the constitution of 1879, was not affected by the constitutional prohibition against the passage of local or special laws.

ID.—CURATIVE ACTS AFFECTING MUNICIPAL PROCEEDINGS.—The legislature has power to pass acts curing the failure to comply with statutory requirements that might originally have been dispensed with in the proceedings of municipal corporations.

ID.—DURATION OF HIGH SCHOOL SESSIONS.—No law in this state provides for a minimum duration of the sessions of a high school, and the fact that an evening high school has shorter sessions than those of other high schools does not deprive it of the character of a regularly established high school or prevent it from participating in the benefits conferred upon regularly established high schools by the act of March 6, 1905.

ID.—GRADE OF INSTRUCTION—COURSES OF INSTRUCTION.—In order to obtain the benefits of that act an evening high school must have maintained the grade of instruction required by law for high schools, which under subdivision 12 of section 1670 of the Political Code is "such as will prepare graduates therein for admission into the state university," and must have the requisite number of teachers and pupils engaged in such a course. If a school offers two courses of instruction, one of which falls short of this standard, it must be affirmatively shown, in a proceeding to obtain the benefits of that act, that the requisite number of teachers and pupils are engaged in a course which complies with such standard. A mere showing that more than two teachers are employed and more than twenty pupils have been in daily attendance in the high school taken as a whole is not sufficient.

ID.—LENGTH OF COURSE.—Under section 1670 of the Political Code no maximum limit is imposed to the length of a high school course.

APPLICATION for a Writ of Mandate directed to the State Superintendent of Public Instruction.

The facts are stated in the opinion of the court.

William G. Burke, City Attorney, and A. S. Newburgh, Assistant City Attorney, for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

SLOSS, J.—Upon an application to this court by the board of education of the city and county of San Francisco for a writ of mandate to compel the state superintendent of public instruction to include the Humboldt evening high school in said city and county among the schools participating in the apportionment of the state high school fund, an alternative writ issued. The respondent appeared and, after filing a demurrer and an answer, entered into a stipulation with the petitioner, agreeing upon the essential facts.

By section 1 of the act entitled "An Act creating a fund for the benefit and support of high schools and providing for its distribution," . . . etc., approved March 6, 1905 (Stats. 1905, p. 58), provision is made for the annual levy of a tax for the support of regularly established high schools of the state. The money so collected is to be turned into a "state high school fund," created by the act and is appropriated for the use and support of regularly established state high

schools. (Secs. 3, 4.)   Section 5 of the act directs the super-
intendent of public instruction to apportion the fund to high
schools of the state upon this basis: one third of the annual
amount equally among the county, district, city, union, or
joint union high schools of the state, irrespective of the num-
ber of pupils enrolled or in average daily attendance therein,
and the remaining two thirds *pro rata* according to the aver-
age daily attendance for the last preceding school year,
"provided that such high schools have been organized under
the law of the state, or have been recognized as existing under
the high school laws of the state and have maintained the
grade of instruction required by law for the high schools; and
provided, that no school shall be eligible to a share in said
state high school fund that has not during the last preceding
school year employed at least two regularly certificated high
school teachers for a period of not less than one hundred and
eighty days with not less than twenty pupils in average daily
attendance for such length of time, . . .; and provided, that
before receiving state aid, each school shall furnish satisfactory
evidence to the superintendent of public instruction of the
possession of a reasonably good equipment of building, labor-
atory, and library and of having maintained, the preceding
school year, proper high school instruction for a term of at
least one hundred and eighty days . . ."

It appears from the stipulation above referred to, that the
Humboldt evening high school was established and organized
by the board of education of the city and county of San
Francisco in October, 1897, at a time when said city and
county was governed by the provisions of the Consolidation
Act and the amendments thereto.   In the establishment and
organization of said school no election, as provided by sections
1670 and 1671 of the Political Code was held.   The sessions of
said school are held in the evening only and continue during
two hours of each of five evenings per week.

The respondent contends, in the first place, that under the
constitution of this state no high school holding evening ses-
sions only can be established.   This contention is based upon
section 6 of article IX of the constitution, providing that "the
public school system shall include primary and grammar
schools, and such high schools, evening schools, normal schools
and technical schools as may be established by the legislature,

or by municipal or district authority." The argument is that
the constitution, by enumerating the various classes of schools
and making evening schools a distinct class in this enumeration, distinguished such evening schools from all other classes
enumerated, and that an evening school could not therefore at
the same time be a high school, since high schools form a
class separately provided for in the section. But this argument proves too much. It would lead equally well to the
conclusion that an evening school could not be either a primary, a grammar, a normal, or a technical school, a conclusion
which seems on its face to be untenable. We are satisfied that
the framers of the constitution, in including in this section
the words "evening schools," intended to obviate any doubt
that might exist as to the power to provide for schools which
should hold their sessions in the evening and that it was not
intended thereby to make a separate class of such schools in
the sense that evening schools could not, as to the nature of
the course of study pursued, possess the character of primary,
grammar, high, normal, or technical schools.

Further, it is objected that the Humboldt evening high
school was not organized pursuant to an election held under
the provisions of section 1670 of the Political Code. By
section 5 of the act of March 6, 1905, the benefits of the
"state high school fund" are limited to high schools that
"have been organized under the laws of the state, or have been
recognized as existing under the high school law of the state."
By this provision the act furnishes its own definition of the
phrase "regularly established high schools of the state," used
in the earlier sections, and impresses the character of regularly
established high schools upon schools which comply with
either of the last quoted requirements of section 5. As appears
from the stipulation, the Humboldt evening high school was
established by the board of education of the city and county
of San Francisco in October, 1897. Section 1616 of the Political Code reads: "Boards of education are elected in cities
under the provisions of the laws governing such cities, and
their powers and duties are as prescribed in such laws, except
as otherwise in this chapter provided." Under section 1 of
an act entitled "An Act to provide for the support of the
common schools of the city and county of San Francisco and
to define the powers and duties of the board of education

thereof,'' approved April 1, 1872 (Stats. 1871-2, p. 846), the board of education of the city and county of San Francisco is given power ''to maintain public schools as now organized in said city and county, and to establish additional ones as required, and to consolidate and discontinue schools, as may be deemed best for the public interest.'' That high schools may properly be included within the term ''public schools'' will hardly be questioned. Indeed, section 6 of article IX, of the present constitution, quoted above, expressly makes them a part of the ''public school system.'' This statute, therefore, in conferring upon the board of education of the city and county of San Francisco power to establish public schools, gave to it the power to establish high schools. The act, having been passed before the adoption of the constitution of 1879, was not affected by the restrictions contained in that instrument prohibiting the passing of local or special laws. (*Nevada School District* v. *Shoecraft*, 88 Cal. 372, [26 Pac. 211].) It would appear clear, therefore, that the Humboldt evening high school is a school that has ''been organized under the law of the state.'' But if there were any doubt as to the legality of the original organization of the school, two curative acts, passed after its establishment, had the effect of obviating any defects existing at the outset, or, at least, of making it a school ''recognized as existing under the high school laws of the state.'' An act of March 15, 1901 (Stats. 1901, p. 299), provides that ''All proceedings for the establishment of high schools heretofore established in incorporated cities are hereby declared legal'': and in 1905 the legislature amended section 1671 of the Political Code, including in said section a subdivision 11th, providing that ''All proceedings for the formation and organization of high school districts and the establishment of county, city, city and county, union, joint union and district high schools had, prior to the passage and approval of this act, are hereby validated and declared legal, and said high · school districts and high schools are hereby declared to be legally formed, organized and established.'' It is well settled that the legislature has power to pass acts curing the failure to comply with statutory requirements that might originally have been dispensed with in the proceedings of municipal corporations. (6 Am. & Eng. Ency. of Law, 2d ed., 941.) In the recent case of *Chase* v. *Trout*, 146 Cal. 350,

[80 Pac. 81], this court fully expressed its views regarding the validity of curative acts. The statute there in question undertook to validate defective proceedings for the collection of taxes, but the principle declared is no less applicable to proceedings of the kind here involved. (See, also, *Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352].) If this school was in all other respects entitled to participate as a high school in the apportionment, these curative acts were clearly sufficient to bring it within the statutory definition of a "regularly established high school."

The further objection is made on behalf of respondent that the shortness of the daily session held in the school in question, i. e., two hours per day, takes the school out of the class of high schools contemplated by the law. While it appears that this session is considerably shorter than that regularly held in day high schools, we find no provision of law regulating the length of the daily sessions, with the exception of section 1673 of the Political Code, which provides that "No school must be continued in session more than six hours a day." No statute provides a minimum duration, and if the school complies with all the requirements of law, the fact that its sessions are of shorter duration than those of other high schools does not deprive it of the character of a regularly established high school, or prevent it from participating in the benefits conferred upon regularly established high schools by the act of March 6, 1905.

But, while the facts already set forth do not, in our opinion, tend to show that the school in question is not a "regularly established high school of the state," and do not, therefore, furnish any reason for excluding it from the apportionment, we think that the stipulation of facts fails to show that the Humboldt evening high school, considered as a high school, complied with the provisions of section 5 of the act of March 6, 1905, as to employment of teachers and average daily attendance.. It might be said that the answer, tested by strict rules of pleading, does not raise a clear issue on this point. It may, however, without straining the meaning of words, be construed as raising such issue, and, inasmuch as this is a controversy between public officers, each of whom is doubtless desirous of ascertaining and performing his exact duty under the law, we are not disposed to allow any technical

construction of the pleadings to prevent the consideration of a question whose determination is necessary to a proper understanding of the rights and obligations arising under the statute in question.

The petition alleges, and it is not denied, that during the school year 1905-6, the Humboldt school employed twenty-six teachers for not less than one hundred and eighty days, and that the average daily attendance was 546 pupils. It appears that graduates of grammar schools have been admitted to said school without examination. (Pol. Code, Sec. 1670, subd. 13.) A course of instruction, extending over three years, and leading to a high school diploma, is given, but there is no suggestion that this course is such as to prepare graduates for admission to the state university. During the year 1905-6 the school had a course of study known as "Course B," which extended for a period of five years, and which was adopted by the petitioner to comply with the admission requirements of the University of California. As we have seen, the act of March 6, 1905, limits the distribution of its benefits to schools which have maintained the grade of instruction required by law for the high schools. That grade of instruction, as declared by subdivision 12 of section 1670 of the Political Code is "such as will prepare graduates therein for admission into the state university." If a school offers two courses, one of which falls short of this standard, it does not, as to such course, maintain the grade of instruction required by law of high schools. Accordingly, in the case at bar, the Humboldt evening high school is to be considered a high school only so far as concerns the instruction given and received in "Course B." But the stipulation does not disclose that it has the requisite number of teachers and pupils in this course. It is true that the parties agree that the school, as a whole, has twenty-six teachers and 546 pupils, but it nowhere appears how many of these teachers or pupils are engaged in high school work and how many are occupied in the three-year course, which is not up to the high school standard. Unless that part of the school which can properly be regarded as a high school has two or more regularly certificated high school teachers and twenty or more pupils in average daily attendance, no right to apportionment under the statute arises. Here these conditions are not shown to exist.

That, in determining the right of a school to share in the benefits of this act, only those teachers and pupils engaged in high school work can be considered, is made manifest by the manner of the apportionment. Two thirds of the fund is to go to schools in proportion to the number of pupils in attendance. This must mean the number of pupils who are receiving the grade of instruction required by law. It cannot have been intended to distribute a high school fund to schools maintaining a certain grade of instruction, and to base this distribution on the number of pupils to whom a lower grade of instruction is being given.

For these reasons, we conclude that the petitioner has on the record before us failed to show any right in the Humboldt evening high school to participate in the allotment of the high school fund. If, however, it shall furnish to the respondent satisfactory evidence of compliance with the requirements of section 5 of the act of March 6, 1905, having regard solely to the teachers and pupils engaged and the equipment employed in "Course B" or any other course preparing pupils for admission to the state university, it will then be entitled to an allotment of the state fund, based, as to two thirds of the fund, on the average daily attendance in such course or courses.

We may add that we attach no importance to the fact that "Course B" extends over five years. The only provision of law regulating the length of the course is that it "shall embrace a period of not less than three years." (Pol. Code, sec. 1670, subd. 12.) That it may extend over a longer period than three years is clearly shown by subdivision 13 of section 1670, which contains a provision relating to schools "where the course of study embraces a period of four years."

The proceeding is dismissed.

Angellotti, J., Henshaw, J., Lorigan, J., and McFarland, J., concurred.

SHAW, J., concurring.—I concur. I agree that the mere fact that the daily sessions of the Humboldt evening high school are of but two hours' duration does not deprive it of its character as a high school organized under the law of the state, or as a high school recognized as existing under the

high school laws of the state.  But I suggest that, in view
of the practically universal custom of holding sessions of the
public schools at least five hours each school day, and the
manifest inequality and lack of uniformity in the law if it is
held to give the same amount for its support to a school in
session only two hours daily as is given to one in session three
times as long and, during each year, imparting presumably
three times as much training and instruction at three times
the expense, it may be a serious question, if it ever arises,
whether the "average daily attendance" for the "term of at
least one hundred and eighty days" required of high schools
to entitle them to receive state aid, under the statute, does not
mean a daily attendance for one hundred and eighty days of,
at least substantially, the same number of hours as is usual
and customary.  If the aid can be secured by two hours
daily instruction for one hundred and eighty days, that is by
three hundred and sixty hours each year, instead of the cus-
tomary nine hundred hours each year, why not by means of
daily sessions for that period of one hour, or less?