[S. F. No. 9944. In Bank.—June 10, 1924.]

MILLER & LUX INC. (a Corporation), Appellant, v. J. A. SECARA et al., Respondents.

[1] BOUNDARIES—PLANE OF ORDINARY HIGH TIDE—LOCATION OF.—The plane of ordinary high tide is an imaginary plane fixed by observation and calculation as to the average high tide and its location is fixed by running of this level on the shore.

[2] ID. — IRRIGATION DISTRICT — DESCRIPTION — REFERENCE TO RIGHT BANK OF RIVER—METHOD OF ASCERTAINMENT OF.—The fact that a map referred to in the description of an irrigation district does not definitely locate the right bank of a river mentioned in said description merely requires it to be otherwise ascertained.

[3] ID.—SPREADING OUT OF STREAM—RIGHT BANK OF—LOCATION OF—INTENT.—Where a stream spreads out indefinitely and becomes a great sheet of water extending over a wide expanse of the territory, the location of the edge of which changes many miles from year to year, the reference in the description of an irrigation district to the "right bank" of the river could not be intended to mean the extreme edge of this sheet of water which would vary so greatly with every storm and every flood, but should be taken to be the bank of the stream as indicated on the ground.

[4] ID.—LOCATION OF BOUNDARY LINE—INTENT.—The question of the location of a boundary line is always a question of the intention of the parties framing the description, or making the agreement or the conveyance containing the description. "Intention, whether express or shown by surrounding circumstances, is all controlling; and that which is most certain and definite will prevail over the less certain and indefinite."

[5] IRRIGATION DISTRICTS—ACTION TO QUIET TITLE AGAINST LIEN OF ASSESSMENT — BOUNDARIES — EVIDENCE. — In this action to quiet plaintiff's title against the lien of an assessment by the Madera Irrigation District, the line located by the defendants' engineers, with the help of the surface indications on the ground, and the

field-notes of the government survey of 1853, and adopted by the trial court in its findings, was evidence of the sufficiency and certainty of the boundaries described in the proceedings for the establishment of said district.

[6] ID.—PLEADING—DE FACTO EXISTENCE OF DISTRICT—EVIDENCE.— In such action, the allegations of the complaint itself, which were not denied by the answer, were sufficient to establish the *de facto* existence of the defendant district at the time the action was commenced; and the evidence introduced was sufficient to warrant a finding that the district had been at least a *de facto* district since the date of the resolution of the board of supervisors finding and declaring it to be duly organized as an irrigation district.

[7] ID.—ACTION TO DETERMINE VALIDITY OF ASSESSMENT—SECTION 69, IRRIGATION DISTRICT ACT—INVALIDITY OF AS STATUTE OF LIMITATIONS.—The provision of section 69 of the Irrigation District Act that at any time within thirty days after the levy of an assessment any district assessment payer may bring an action in the superior court to determine the validity thereof, when regarded merely as a statute of limitations, is void as not allowing a reasonable period of time to the property owner, who has not received legal notice of the hearing before the board of equalization, within which to commence an action to contest the assessment.

[8] ID.—RESULT OF INVALIDITY OF SECTION 69 OF ACT—TIME.—The result of the invalidity of the statute of limitations prescribed by section 69 of the Irrigation District Act is to permit the assessment payer to bring an action for contesting the assessment within a reasonable time; and an action commenced within three months is commenced within time.

[9] ID. — SECTION 72 OF ACT — CONSTRUCTION OF — TIME. — The six months' limitation prescribed in section 72 of the Irrigation District Act is not unreasonable, particularly in the light of the fact that the assessment payer would know from the provisions of the law that the date of the levy would in all likelihood be some time within the month of September.

[10] ID.—EFFECT TO BE GIVEN SECTION 72 OF ACT.—The provision of section 72 of the Irrigation District Act that "in any such action all findings of fact or conclusions . . . of the board of supervisors upon all matters shall be conclusive, unless such action was instituted within six months after such finding or conclusion was made" is to be given effect as a rule of evidence in an action by an assessment payer to quiet title to its land against the assessment of an irrigation district.

[11] ID.—JURISDICTION—DUE PROCESS—CURATIVE PROVISION—STATUTE OF LIMITATIONS—TIME.—A total lack of jurisdiction due to absence of notice sufficient to constitute due process of law cannot be cured by a curative act or by a curative provision in the stat-

ute, but such a defect may be cured, in effect, by a statute of limitations, provided the latter is not unreasonable and is therefore valid.

[12] ID.—CONCLUSIVE EVIDENCE PROVISION IN SECTION 72 OF ACT— EFFECT OF.—A conclusive evidence clause such as that contained in section 72 of the Irrigation District Act in so far as it purports to debar all inquiry into the question of jurisdiction of the supervisors in forming the district "must be held unavailing to prevent such inquiry where that board has proceeded without jurisdiction."

[13] ID.—VALIDITY OF ORGANIZATION OF DISTRICT—COLLATERAL ATTACK—APPLICABILITY OF SECTION 72 OF ACT.—As against any attempt to question the validity of the organization of an irrigation district in any proceeding to contest the validity of an assessment other than the direct attack in *certiorari*, the conclusive evidence provision of section 72 of the Irrigation District Act should be given its full effect.

[14] CONSTITUTIONAL LAW—RULES OF EVIDENCE—LEGISLATURE.—The legislature is empowered to prescribe the rules of evidence, subject to the limitations placed upon it by our state and federal constitutions.

[15] IRRIGATION DISTRICTS — VALIDITY OF ASSESSMENT — QUIETING TITLE—COLLATERAL ATTACK—CERTIORARI.—An action to quiet title to land against the lien of an assessment of an irrigation district involving the question of the validity of the assessment is a collateral attack upon the validity of such assessment as distinguished from the direct attack thereon by *certiorari*.

[16] ID.—CHARACTER OF ACTION — PLEADING — APPEAL. — The plaintiff cannot successfully assert on appeal that its action is not one to contest the validity of the assessment by the irrigation district, but is an action to quiet title, where its complaint calls upon the defendants to set forth in their answer the nature of their claim, and the answer does claim a lien on the assessment, and if the action had been for any other purpose than to contest the validity of the assessment plaintiff would have dismissed its action or would have taken judgment upon the pleadings quieting its title subject to the lien.

[17] ID.—LEVYING OF ASSESSMENT—VALIDITY OF ASSESSMENT—RIGHT TO CONTEST—TIME.—This action to quiet title against the lien of an irrigation district assessment having been commenced within six months after the levy of the assessment, the findings and conclusions of the board of directors of the irrigation district in levying the assessment are not conclusive herein and the plaintiff is, therefore, at liberty to litigate herein the question of the validity of the assessment.

[18] ID. — VALIDITY OF ORGANIZATION OF DISTRICT — RESOLUTION OF BOARD OF SUPERVISORS—EVIDENCE—TIME.—The resolution of the

board of supervisors, wherein it found, concluded, and declared
that the district in question was duly organized as an irrigation
district under the provisions of the California Irrigation District
Act, having been adopted much more than six months prior to the
commencement of plaintiff's action to quiet title to its land
against the lien of the assessment by said district, when that reso-
lution was introduced in evidence in the action, the validity of
the organization of the district was conclusively established so
far as this action was concerned; and the conclusiveness of this
proof for the purpose of this action was in no way qualified
or lessened by the fact that the question of the validity of the
organization of said district was still open to be determined in
a pending *certiorari* proceeding.

[19] ID.—EVIDENCE—BENEFIT TO PLAINTIFF'S LANDS—BOARD OF SU-
PERVISORS—APPEAL.—The validity of the organization of the ir-
rigation district having been conclusively established in such action
to quiet title to plaintiff's lands, the trial court committed no
error in refusing to permit the plaintiff to offer evidence for the
purpose of showing that its lands were already irrigated; that
they would not be benefited, and that plaintiff had unsuccessfully
endeavored to have its lands excluded from the districts, these
questions being for the determination of the board of supervisors,
whose determination thereof is not subject to review by the court
in the absence of fraud, actual or constructive, at least not in a
collateral attack.

[20] ID.—APPLICABILITY OF SECTION 78 OF ACT TO PLAINTIFF'S LANDS.
—The provision of section 78 of the Irrigation District Act, ex-
cepting from certain assessments lands irrigated by water pumped
from an underground source or sources, is inapplicable to plain-
tiff's land, none of which was so irrigated.

[21] ID.—LEVYING OF ASSESSMENT—COMPLIANCE WITH ACT—EVI-
DENCE.—Assuming that the Irrigation District Act requires the
board of directors of the district in levying an assessment to
state expressly and in detail the specific purposes for which the
money is to be raised, this requirement is complied with in the
resolution levying the assessment and reciting that a stated sum
is required to meet outstanding warrants which have been issued
in accordance with the provisions of the act; that a further
named sum will be required before a given date for the purpose
of organization and for other purposes of said act; and that a
still further amount will be needed to meet the obligations of the
district that will be incurred before the time for levying the next
annual assessment, all three such items being authorized by the
several provisions of said act.

[22] EVIDENCE—PRIMA FACIE CASE—PROOF OF FACT.—When a *prima
facie* evidence of a given fact has been introduced, its effect is

not destroyed by the introduction of contradictory evidence; it stands as proof of that particular fact unless and until it is both contradicted and overcome by such other evidence.

[23] IRRIGATION DISTRICTS—SECTION 49 OF ACT—PRIMA FACIE CASE—NOTICE—INFERENCES.—In such an action, under section 49 of the Irrigation District Act by the introduction of the assessment-book in evidence at the trial, the defendants established a *prima facie* case of the validity of the assessment and of the fact that all the forms of law in relation to the assessment and levy had been complied with, and the burden then rested upon the plaintiff to produce evidence to contradict and overcome that showing; but as plaintiff did not offer any evidence to show that no other publications of the notice of the assessment and of the meeting of the board of directors as a board of equalization than those shown by certain affidavits were made, it was the reasonable and natural inference that such other publications were in fact made and that they were sufficient.

[24] ID.—PUBLICATION OF NOTICE—FINDING—EVIDENCE—APPEAL.—In such action, the trial court having found, by necessary implication, that the publication of notice of the assessment and of the meeting of the board of directors as an equalization board was sufficient, and such finding being justified, if not compelled, by the state of the evidence, it is conclusive upon appeal.

[25] ID.—INFERENCES—FINDINGS—APPEAL.—"Where the facts established may reasonably authorize either one of two opposite inferences and the trial court has adopted one and rejected the other, its decision is binding upon the appellate court."

[26] ID.—INAPPLICABILITY OF SECTION 1705, CODE OF CIVIL PROCEDURE.—Section 1705 of the Code of Civil Procedure is inapplicable to the provision of the Irrigation District Act relating to publication of notice of the assessment and of the meeting of the board of directors of the irrigation district sitting as a board of equalization.

[27] ID.—SECTION 4459, POLITICAL CODE—AFFIDAVITS OF PUBLICATION.—In such action, the notice set forth in the affidavits of publication was substantially in compliance with section 4459 of the Political Code.

[28] ID.—STATUTE OF LIMITATIONS—IMMATERIAL FINDING.—In such action, the finding of the trial court that plaintiff's cause of action is barred by the provisions of sections 68, 69, and 72 of the Irrigation District Act was predicated upon an erroneous conclusion of law, but as this finding is in no way essential to support the judgment in favor of defendants, the error is immaterial.

APPEAL from a judgment of the Superior Court of Fresno County. C. E. Beaumont, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edward F. Treadwell, Gail C. Larkin and Joseph C. Sharp for Appellant.

Haven, Athearn, Chandler & Farmer for Respondents.

MYERS, C. J.—This is an action to quiet plaintiff's title against the lien of an irrigation district assessment upon the ground of the invalidity of the organization of the defendant Madera Irrigation District, and the invalidity of an assessment of $35,859.96 levied by the board of directors of such irrigation district. Judgment was rendered in favor of the defendants.

The defendants claim that the defendant district was properly organized and that the plaintiff by suing the Madera Irrigation district as such, and alleging that it is claiming to be and acting as an irrigation district, has admitted at least that the defendant was a *de facto* district, and therefore that plaintiff cannot attack the validity of its organization in his action, which is in the nature of a collateral attack thereon.

The first objection to the validity of the district is that the description of the district in the proceedings for organization is uncertain and therefore that the whole proceedings are void because of the fact that the lines of the district cannot be ascertained. This contention is based upon the alleged impossibility of locating the right bank of the Fresno River, which is made one of the boundary lines of the district. The portion of the description attacked by the plaintiff is as follows:

"Thence east along section lines one and three-fourths miles more or less to the intersection of the south line of section 14, said township, with the left bank of Ash Slough; thence southwesterly along the left bank of said slough to the right bank of the Chowchilla Canal in block 25 of subdivision No. 1 of the Chowchilla Ranch, *according to the official map of said subdivision on file in the office of the county recorder of said county of Madera;* thence southeasterly along the right bank of said Chowchilla Canal to the *right* bank of the Fresno river, *which said river runs through blocks 15, 16, 17, 18, 19, 20 and 21 of subdivision*

*No. 2 of the Chowchilla Ranch according to the official map*
*of said subdivision on file in the office of the county recorder*
*of said county of Madera,* thence easterly along the right
bank of said Fresno river seven and one-half miles more or
less to its intersection with the west line of sections 16 and
21, township 11 south, range 16 east." (Italics ours.)

The plaintiff's point is that the river divides in several
branches; that each of these branches is shallow and that the
banks are not well defined; that the river "bank" is the
bank at high water and that this is never the same, for the
reason that the river spreads out into a great sheet of water
several miles wide, and that the edge of this sheet cannot
be located because it is never at the same place during the
flood season of different years.

It appears from the evidence that the government maps
of this locality of 1853 show a single line passing through
blocks 15, 16, 17, 18, 19, 20, and 21 of subdivision 2 of the
Chowchilla ranch, which the field-notes show indicates the
right bank of the Fresno River. The surveyors employed
by the defendants testified that they had no difficulty in
locating the right bank of the Fresno River where it passed
through the blocks in question, and it also appears from
the testimony that there is only one branch of the river
which flows through the particular blocks referred to in the
description. In one place for about 600 feet only was it
difficult to ascertain the location of the bank. At this point
there is no very well-defined bank. The surveying level,
however, showed where the edge of the water would be in
passing from the defined bank to the next defined point in
the bank 600 feet downstream, and the surveyors accepted
such line on the high land across this space as the bank
of the river. The method of locating the line of high tide
by ascertaining the intersecting line of the plane of water
at mean high tide with the surface of the land, and using
this line of intersection as the boundary line between the
tide-lands of the city and the adjoining lands of the de-
fendants was used in the case of *City of Los Angeles* v. *San*
*Pedro etc. R. R. Co.,* 182 Cal. 652 [189 Pac. 449], although
a slight change in elevation resulted in a variation of a
mile or more in the line of high tide. Indeed, this is the
only possible method of locating the boundary line fixed
by statute (sec. 830, Civ. Code) as the boundary of lands

bordering on tide water. **[1]** The plane of ordinary high tide is an imaginary plane fixed by observation and calculation as to the average high tide and its location is fixed by running of this level on the shore. No reason is suggested why a similar process should not be used to locate the line of the bank for the hiatus of 600 feet between the well-defined points of the bank shown upon the ground, as was done by the engineers who testified in this case.

It should perhaps be stated that the map referred to in the above description of the Chowchilla ranch does not show the east bank of the Fresno River, but the reference to this map serves to determine which of the numerous channels of the Fresno River it was intended to adopt in the description; that is, the branch flowing through the blocks referred to as shown on this map. This being ascertained, the exact location upon the ground could be made in any way adapted to ascertain the location of that bank. **[2]** The fact that the map does not definitely locate the right bank of the river, merely requires it to be otherwise ascertained. **[3]** It might be said also that where the stream spreads out indefinitely and becomes a great sheet of water extending over a wide expanse of the territory, the location of the edge of which changes many miles from year to year, that the reference in the description to the "right bank" of the river could not be intended to mean the extreme edge of this sheet of water which would vary so greatly with every storm and every flood, but should be taken to be the bank of the stream as indicated on the ground.

**[4]** The question of the location of a boundary line is always a question of the intention of the parties framing the description, or making the agreement or the conveyance containing the description. "Intention, whether express or shown by surrounding circumstances, is all controlling; and that which is most certain and definite will prevail over the less certain and indefinite." (9 Corpus Juris, p. 152, sec. 2, p. 193, sec. 78.) **[5]** We think the line located by the defendants' engineers, with the help of the surface indications on the ground, and the field-notes of the government survey of 1853, and adopted by the court in its findings, was evidence of the sufficiency and certainty of the boundaries described in the proceedings for the establishment of the district.

Appellant contends that the defendants failed to establish that the alleged district had either a *de jure* or *de facto* existence. [6] The allegations of the complaint itself, which were not denied by the answer, were sufficient to establish the *de facto* existence of the district at the time this action was commenced. We are of the opinion that the evidence introduced was sufficient to warrant a finding that the district had been at least a *de facto* district since January 12, 1920, the date of the resolution of the board of supervisors finding and declaring it to be duly organized as an irrigation district. Indeed, the appellant does not seriously oppose this conclusion, but urges rather that in the absence of sufficient proof of the valid organization of the district, appellant was entitled to prove herein that its lands were not benefited thereby, and therefore should have been excluded therefrom, and could not be lawfully assessed for the expense thereof. Appellant offered to prove these things at the trial of this action, to which defendants' objection was sustained by the trial court, and appellant specifies this as prejudicial error requiring a reversal. Appellant concedes that if the district had in fact been lawfully organized, pursuant to sufficient petitions therefor, and after a hearing before the supervisors pursuant to notice to the property owners whose lands were proposed to be included in the district, giving to such property owners a reasonable opportunity to appear and litigate before the supervisors the questions of benefit and the inclusion or exclusion of their lands, and if the supervisors, acting at such hearing upon competent evidence had decided these questions adversely to appellant, it would then have been precluded from litigating them in the present action. But it argues that in the absence of proof herein of such hearing and action by the supervisors and of the facts necessary to confer jurisdiction upon them to determine those questions, appellant had a constitutional right to litigate them in this action. This brings us to a consideration of the validity and effect of the provisions contained in sections 68, 69, 72, and 4 of the Irrigation District Act. Section 68 provides for the bringing of an action *in rem* in the superior court by the directors of the district to determine the validity of such an assessment. Section 69 provides that at any time within thirty days after the levy of an assessment any

district assessment payer may bring an action in the superior court to determine the validity thereof. Section 72 provides: "No contest of any thing or matter herein provided shall be made other than within the time and manner herein specified, and in such action all findings of fact or conclusions of said board of directors, or of the board of supervisors upon all matters shall be conclusive; unless such action was instituted within six months after such finding or conclusion was made." Section 4 of the act provides that "A finding of the board of supervisors in favor of the genuineness and sufficiency of the petition and notice shall be final and conclusive against all persons except the state of California upon suit commenced by the attorney general . . . "

This court decided in *Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254 [208 Pac. 304], that said section 4, "in so far as it would give conclusive validity to the order of the board of supervisors, in the absence of notice and hearing, and would deprive the property owner at every subsequent stage of the proceedings of any right to contest the question as to whether or not his lands would be benefited, would be violative of the due process of law clauses of the federal and state constitutions." It was said therein that said section 69 provides "for proceedings by the property owner to contest the validity of the assessment, but it is evidently not intended that this contest should include an inquiry into the validity of the proceedings for the organization of the district. . . . " This court there concluded that the jurisdiction vested in the courts by the constitution to issue writs of *certiorari* for the purpose of reviewing proceedings of an inferior tribunal or board exercising judicial functions in order to ascertain whether or not such inferior tribunal or board was acting within its jurisdiction cannot be taken away by the legislature, and that the sections above referred to, in so far as they purport to deprive the courts of their jurisdiction to review the proceedings of the board of supervisors, or to make the findings of the board of supervisors conclusive "if construed to prohibit the inquiry upon direct attack in *certiorari* into the question of whether or not the supervisors conformed to the constitutional requirements of due process of law in exercising their jurisdiction . . . ," are *to that extent*

void. The opinion in that case did not expressly hold, but strongly implied, that the provisions here in question are valid as against any other attack than the direct attack in *certiorari*.

[7] In the former opinion in this case it was held that the thirty-day statute of limitations prescribed in section 69 of the act, when regarded merely as a statute of limitations, is void as not allowing a reasonable period of time to the property owner, who has not received legal notice of the hearing before the board of equalization, within which to commence an action to contest the assessment. To that conclusion we adhere. (*Hayes* v. *Douglas County*, 92 Wis. 429 [53 Am. St. Rep. 926, 31 L. R. A. 213, 65 Pac. 482]; *Lamb* v. *Powder River Live Stock Co.,* 132 Fed. 434 [67 L. R. A. 558, 65 C. C. A. 570], and cases cited therein.) [8] The result of the invalidity of that statute of limitations is to permit the assessment payer to bring such an action within a reasonable time (*Rossi* v. *Caire*, 186 Cal. 544, 548 [199 Pac. 1042], and this action, which was commenced within three months, must be held to have been commenced in time. [9] We think there is no room to doubt that the six months' limitation prescribed in section 72 of the act is not unreasonable, particularly in the light of the fact that the assessment payer would know from the provisions of the law that the date of the levy would in all likelihood be some time within the month of September.

A six months' statute of limitations was impliedly held valid in *Capuccio* v. *Caire*, 189 Cal. 514 [209 Pac. 367]. [10] We see no reason, therefore, why the provision of section 72 that "in any such action all findings of fact or conclusions . . . of the board of supervisors upon all matters shall be conclusive, unless such action was instituted within six months after such finding or conclusion was made" should not be given full effect as a rule of evidence in this action. [11] We agree with counsel for appellant that a total lack of jurisdiction due to absence of notice sufficient to constitute due process of law cannot be cured by a curative act or by a curative provision in the statute, but we see no reason why such a defect may not be cured, in effect, by a statute of limitations, provided the latter is not unreasonable and is therefore valid. [12] We also agree that a conclusive evidence clause such as that contained in section

72 *in so far as it purports to debar all inquiry into the question of jurisdiction* of the supervisors in forming the district "must be held unavailing to prevent such inquiry where that board has proceeded without jurisdiction." We so held in *Miller & Lux* v. *Board of Supervisors, supra,* but this conclusive evidence provision was there held to be unavailing *only* to the extent that it purported to "prohibit the inquiry upon direct attack in *certiorari* into the question of whether or not the supervisors conformed to the constitutional requirement of due process of law in exercising their jurisdiction." [13] It was strongly, if not necessarily, implied in that decision that as against any attempt to question the validity of the organization of the district in any proceeding to contest the validity of an assessment other than the direct attack in *certiorari* the conclusive evidence provision of section 72 should be given its full effect. This is the interpretation which we place upon that opinion and we think that it should be adhered to. [14] The legislature is empowered to prescribe the rules of evidence, subject to the limitations placed upon it by our state and federal constitutions. Nothing therein has been called to our attention which would prohibit the legislature from making the record of a proceeding of a judicial or *quasi*-judicial character conclusive as against a collateral attack or from limiting the scope of the inquiry upon such collateral attack, the opportunity being open to test all jurisdictional questions by means of a direct attack, as was held in *Miller & Lux* v. *Board of Supervisors, supra.* [15] It is clear that this action is a collateral attack upon the validity of the assessment as distinguished from the direct attack under consideration in that case.

Plaintiff argues that the words "such action" in section 72 refer back to section 69, and that the provisions of section 72 are therefore applicable only to the action provided for in section 69, to wit, an action by an assessment payer to contest the validity of the assessment. [16] Plaintiff asserts that this is not such an action, but is a suit to quiet title, and that, therefore, the provisions of section 72 are not applicable herein. There is no merit in this contention. This is plainly an action to contest the validity of this assessment—nothing more and nothing less. Plaintiff in its complaint herein alleged title to the premises in itself and that the defendants claimed some interest therein, which claim was

without right, and called upon them to set forth in their answer the nature of their claim. Defendants in their answer admitted plaintiff's ownership of the premises, claimed in behalf of the defendant Irrigation District a lien thereon to the amount of this assessment and disclaimed any other interest therein. If this action had been for any other purpose than to contest the validity of this assessment plaintiff thereupon would have dismissed its action or would have taken judgment upon the pleadings quieting its title subject to the lien. If this is not an action to determine the validity of this assessment it must follow that plaintiff is entitled to no relief herein other than that which defendants freely concede to it.

Plaintiff next contends that the conclusive evidence provision of section 72 is inapplicable herein for the reason that this action was commenced within six months after the session of the board of directors as a board of equalization and after the levy of the assessment in question. [17] It is true that this action was commenced within six months after the levy of the assessment, and it follows therefrom that the findings and conclusions of the board of directors in levying the assessment are not conclusive herein and the plaintiff is, therefore, at liberty to litigate herein the question of the validity of the assessment. [18] But, on the other hand, the resolution of the board of supervisors, wherein it found, concluded, and declared that the district was duly organized as an irrigation district under the provisions of the California Irrigation District Act was adopted much more than six months prior to the commencement of this action, and it follows that when that resolution was introduced in evidence herein the validity of the organization of the district was conclusively established so far as this action is concerned. The conclusiveness of this proof for the purpose of this action is in no way qualified or lessened by the fact that the question of the validity of the organization of this district is still open to be determined in the pending *certiorari* proceeding. Plaintiff introduced evidence at the trial hereof to prove the pendency of that *certiorari* proceeding. We are unable to conceive of the relevancy of this evidence except to a plea in abatement. It would be an unusual thing for a plaintiff to plead in abatement of its own action that there was another action

pending, instituted by it, which involved the same question. No such plea was filed herein, but it is not improbable that the trial court herein, if it had been requested so to do by the plaintiff, might have granted a continuance of this action pending the determination of the proceeding in *certiorari.* It is sufficient to say that the plaintiff made no such request, but, on the contrary, elected to pursue the present action to a conclusion. The pursuit of the present action carried with it the consequence that under the provisions of section 72 the trial court was compelled to find that the district was duly and lawfully organized. **[19]** In this state of the evidence the trial court committed no error in refusing to permit the plaintiff to offer evidence for the purpose of showing that its lands were already irrigated; that they would not be benefited, and that plaintiff had unsuccessfully endeavored to have its lands excluded from the district. Those questions were for the determination of the board of supervisors, and its determination thereof is not subject to review by the court in the absence of fraud, actual or constructive, at least not in a collateral attack such as the present one. **[20]** The provision of section 78, excepting from certain assessments lands irrigated by water pumped from an underground source or sources, is clearly inapplicable to plaintiff's land, none of which was so irrigated.

**[21]** There is no merit in the contention that the assessment was void because not shown to have been made for a purpose for which the board can make an assessment. We find no provision in the act which requires the board in levying an assessment to state expressly and in detail the specific purposes for which the money is to be raised, but, assuming that the law does so require, we think the requirement is complied with in the resolution levying the assessment herein. It recites that the sum of $78,620.70 is required to meet outstanding warrants which have been issued in accordance with the provisions of the act. This is one of the purposes specified in section 39 for which such assessment shall be levied. It further recites that "before the 1st day of January, 1921, there will be required by the district for the purpose of organization and for other purposes of said act the further sum of $63,993." This is expressly authorized by section 61 of the act. It recites that

the further sum of $46,790.91 will be needed to meet the obligations of the district that will be incurred before the time for levying the next annual assessment. This also is expressly authorized by section 39 of the act. These three items added together make up the amount of the assessment which was levied in the sum of $189,404.51.

Appellant most earnestly contends that the assessment was void because no sufficient notice thereof and of the meeting of the board as a board of equalization thereon was given as required by the statute. The requirements of the statute herein are found in section 37, which provides: "On or before the first Monday in August in each year, the assessor must complete his assessment-book, and deliver it to the secretary of the board, who must immediately give notice thereof, and of the time the board of directors, acting as a board of equalization, will meet to equalize assessments, by publication in a newspaper published in each of the counties comprising the district. The time fixed for the meeting shall not be less than twenty nor more than thirty days from the first publication of the notice; and in the meantime the assessment-book must remain in the office of the secretary for the inspection of all persons interested." The meeting of the board of equalization was set for September 2, 1920. At the trial affidavits of publication were introduced, showing that notice thereof was published in three newspapers in Madera County on August 5th, 12th, and 19th, respectively, in each of those papers, together with an affidavit showing that such notice was published in a paper in Merced County on August 23, 1920, which was but ten days prior to the date of the meeting. In the former opinion filed herein it was assumed as a fact established beyond controversy that no other publication was made. This assumption was a natural one in the light of the circumstance that in all of the briefs filed herein up to that time all of the arguments on both sides of the case were predicated upon this assumed fact, with the exception of a single short paragraph in respondents' brief. Proceeding upon that assumed fact, this court interpreted the statute as requiring but a single publication in each county, but as requiring further that such publication should be made in each of the counties, not less than twenty nor more than thirty days prior to the date of the hearing, and

193 Cal.—49

concluded that the publication thus assumed to have been made was insufficient to meet the requirement of the statute. It further concluded that the requirement of publication in more than one of the counties was not essential to due process of law and therefore might have been dispensed with by the legislature, and that when the legislature had provided for publication in each of the counties it might have added thereto a provision to the effect that if such publication should be made in one of the counties the failure to so publish in the other county would not invalidate the assessment unless an action was brought to contest the same within thirty days thereafter, and that the legislature did so provide in effect in sections 69 and 72 of the act and that the omission was cured thereby. (5 Cal. Jur. 872–875, citing *Chase* v. *Trout,* 146 Cal. 350 [80 Pac. 81]; *Baird* v. *Monroe,* 150 Cal. 560 [89 Pac. 352]; *Board of Education* v. *Hyatt,* 152 Cal. 515 [93 Pac. 117]; *Wilcox* v. *Engebretsen,* 160 Cal. 288 [116 Pac. 750]; *Schaffer* v. *Smith,* 169 Cal. 764 [147 Pac. 976]; *Imperial Land Co.* v. *Imperial Irr. Dist.,* 173 Cal. 660 [161 Pac. 113]; *Watkinson* v. *Vaughn,* 182 Cal. 55 [186 Pac. 753].)

The petition for rehearing was granted herein in order that we might give further consideration to the validity of these conclusions. Upon such consideration we have arrived at the conclusion that these questions are not involved in a determination of this appeal. Section 49 of the act provides as follows: "The assessment-book or delinquent list, or a copy thereof, certified by the collector, showing unpaid assessments against any person, or property, is *prima facie* evidence of the assessment, the property assessed, the delinquency, the amount of assessments due and unpaid, and that all the forms of the law in relation to the assessment and levy of such assessments have been complied with." "*Prima facie* evidence is that which suffices for the proof of a particular fact until contradicted and overcome by other evidence." (Code Civ. Proc., sec. 1833.) It is to be noted that the code does not say "until contradicted *or* overcome by other evidence," but "until contradicted *and* overcome by other evidence." [22] Therefore, when *prima facie* evidence of a given fact has been introduced, its effect is not destroyed by the introduction of contradictory evidence. It stands as *proof* of that particular fact unless and

until it is *both contradicted and overcome* by such other
evidence. "Proof" is something more than merely "evi-
dence." It is "the establishment of a fact by evidence."
(Code Civ. Proc., sec. 1824.)   **[23]** The defendants intro-
duced the assessment-book in evidence at the trial, and no
question was made then or since as to the genuineness thereof
or the correctness of the entries therein or the manner of
making and keeping the same. By so doing the defendants
established a *prima facie* case of the validity of the assess-
ment and of the fact that all the forms of law in relation
to the assessment and levy had been complied with. This
showing would not only justify but would compel a finding
to this effect unless it was both contradicted and overcome
by other evidence in the case. The plaintiff introduced no
evidence which even tended to contradict it. The defend-
ant, however, introduced affidavits of publication showing
the publication of the notice three times in each of three
papers in Madera County and one time in one paper in Mer-
ced County. This was all the evidence introduced or offered
upon this subject. It may be doubted that this evidence
can justly be said to contradict the *prima facie* case thus
made. It presented no irreconcilable conflict therewith, for
the reason that other publications of the notice may have
been made in other newspapers in both counties or in the
same newspapers. If at this stage of the trial the burden
had still rested upon the defendants to prove the validity
of their assessment, then the trial court might justly have
inferred that no other publications were made than those
they proved, but the introduction of the assessment-books
having established a *prima facie* case of the validity of the
assessment, the burden then rested upon the plaintiff to
produce evidence to contradict and overcome that showing.
As the plaintiff did not offer any evidence to show
that no other publications were made, it was the reason-
able and natural inference that such other publica-
tions were in fact made and that they were sufficient.
(See *Corson* v. *Crocker,* 31 Cal. App. 626, 632 [161 Pac.
287] ; *Sacramento Bank* v. *Montgomery,* 146 Cal. 745, 751
[81 Pac. 138], and cases there cited.) If the trial court
had found that the publication of notice was insufficient, a
nice question would have been presented as to whether or
not in this state of the evidence such finding would be

legally justified. But the trial court did not so find.
[24] It found, by necessary implication, that the publication was sufficient. We must hold that this finding was justified, if, indeed, it was not compelled, by the state of the evidence. This finding is conclusive upon this appeal. [25] ''Where the facts established may reasonably authorize either one of two opposite inferences and the trial court has adopted one and rejected the other, its decision is binding upon the appellate court, . . . '' (10 Cal. Jur., p. 741; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42].)

This conclusion renders it unnecessary to consider appellant's contention that the notice as published did not conform to the requirements of section 1705 of the Code of Civil Procedure and section 4459 of the Political Code. [26, 27] Nevertheless, we adhere to our former conclusions upon these points that section 1705 of the Code of Civil Procedure is inapplicable to this situation and that the notice set forth in the affidavits of publication was substantially in compliance with section 4459 of the Political Code. [28] The finding of the trial court that plaintiff's cause of action is barred by the provisions of sections 68, 69, and 72 of the act was predicated upon an erroneous conclusion of law, but as this finding is in no way essential to support the judgment, the error is immaterial.

(Unless otherwise stated the sections herein referred to are those in the California Irrigation District Act, No. 1726, General Laws 1915, page 661 et seq., and amendments thereto in codes and General Laws 1921, page 1436 et seq.; being the act of 1897 [Stats. 1897, p. 254], and amendments thereto.)

The judgment is affirmed.

Lawlor, J., Richards, J., Seawell, J., Lennon, J., Shenk, J., and Waste, J., concurred.