[Civ. No. 543. Fourth Appellate District.—February 3, 1931.]

R. H. WALKER et al., Petitioners, v. C. C. VAN VAL-KENBURGH, Jr., as City Superintendent of Streets, etc., Respondent.

Simpson & Simpson and Walter Sorenson for Petitioners.

Claude L. Rowe for Respondent.

MARKS, J.—This is an original petition filed in this court praying for a writ of mandate commanding respond-

ent to make and issue an assessment to cover the sum due for work performed and materials furnished in the completion of a contract under the "Improvement Act of 1911", and attach thereto a diagram of such assessment, together with a warrant for the amount due.

The city of Fresno is a municipal corporation organized as such under a freeholders' charter. The respondent, C. C. Van Valkenburgh, Jr., was at times material to this proceeding, acting superintendent of streets of city of Fresno. Petitioners were contractors who performed the work of constructing and installing an electrolier system on certain streets of the city of Fresno.

The case comes before us on an agreed statement of facts from which it appears that all the proceedings taken by the city were in due form and in accordance with the provisions of the Improvement Act of 1911, save, however, two controversial exceptions, and that the contract was fully performed in accordance with the plans and specifications. Respondent maintains that these exceptions justify his refusal to proceed with the assessment.

It is admitted that the peremptory writ of mandate must issue, unless it be found that the provisions of an ordinance of the city of Fresno apply to the proceedings in question here, and unless it be further found that the failure of the contractors to secure the necessary licenses and permits thereunder and to complete the work within the time fixed by the contract be found fatal to the rights of petitioners. This ordinance created the offices of electrical inspector and assistant electrical inspectors, and provided their duties and compensation, and provided also for the issuance of permits for electrical work and for the inspection thereof; for the examination of master and journeyman electricians and the issuance of certificates thereto, and required the filing of master electrician's bonds.

It is admitted that the petitioners did not complete the work within the time required in their contract, and that it was not completed until eight days thereafter; that they applied for an extension of time for the completion of such work, which application was denied by the city commission of Fresno.

It is further admitted that petitioners and their employees were not licensed as electrical, or assistant electrical in-

spectors, nor master or journeyman electricians, nor did they or any of them pass the examination required by the ordinance of the city of Fresno under which such licenses or permits could be issued. This ordinance provides a general plan for the licensing, by the city, of electrical inspectors, assistant electrical inspectors, master electricians, journeyman electricians and apprentices. It is provided that no work can be installed nor materials furnished by those not having such licenses. Respondent urges that this ordinance was passed under the general police power given by the Constitution and laws to the city of Fresno for the protection of life and property therein, and that as this is a legal exercise of the police power given to the city its provisions should be construed as forming a part of the general procedure established by state law governing local improvement proceedings under the provisions of the Improvement Act of 1911 (Stats. 1911, p. 730). Petitioners urge that this ordinance applies to the installation of electric wires, equipment and appliances in and about buildings and cannot be construed to apply to the construction of an electrolier street lighting system. While the language of the ordinance and its general purposes would lend considerable weight to this argument, we do not find it necessary to decide this question here.

Section 46 of the charter of the city of Fresno provides as follows:

"The Commission is hereby authorized and empowered to construct, reconstruct, repair, maintain and improve streets and highways, and to open and close streets, and to make, acquire, construct, reconstruct, repair, operate and maintain all other public improvements of whatsoever kind or character in accordance with the laws of the state of California now existing or hereafter enacted when the Commission elects to follow such state laws, the city being specially and generally empowered to avail itself of such state laws, and nothing in this section contained shall be construed as an abridgment or limitation of the general power of the city to avail itself of State laws.

"The Commission shall also have power by ordinance to provide a plan or scheme for the payment of all or any part of the cost of the improvement, construction, reconstruction, repair, operation or maintenance of any public

street, highway or place and of any special lighting or electrolier system, and of the cost of any street opening or closing by the levy and collection of special assessments upon abutting, adjoining, contiguous and other property specially benefited in accordance with the benefits accruing to such property by reason thereof.''

Under the terms of this charter provision it is evident that the city of Fresno may follow any of the state improvement acts which may be applicable in installing its local improvements. The city has failed to exercise the power seemingly given to it by the charter, and has passed no ordinance providing a plan or scheme for the payment of the cost of the construction of an electrolier system within the city. It therefore must proceed under the provisions of a state statute. In the installation of the work in question here it elected to proceed under the Improvement Act of 1911. Having thus elected so to do the city was bound to follow the provisions of that act and could not proceed partly under the act and partly under some other plan or scheme of its own. (*Cole* v. *City of Los Angeles,* 180 Cal. 617 [182 Pac. 436]; *Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754].)

The Improvement Act of 1911 provides a detailed, comprehensive and complete plan for the construction of and payment for local improvements. It is complete in itself. Among other things it provides for the appointment of inspectors to inspect the work during its progress and to see that it is done in accordance with the contract and the plans and specifications. When such inspectors are appointed under the provisions of this act and perform their duties in accordance with its requirements, the purposes of the act are fulfilled. We are of the opinion that the city of Fresno has no more authority to provide a separate plan for the appointment and licensing of such inspectors and for the examination and licensing of electricians engaged in the work of performing the terms of the contract and installing the electrolier system than it would have to attempt to dispense with some of the necessary requirements of the Improvement Act of 1911. It must either proceed under and in accordance with the provisions of the Improvement Act of 1911 or adopt a plan or scheme of its own, if authorized so to do. It having failed to adopt such a plan or scheme, it

cannot, by ordinance or otherwise, change or add to the provisions of the state law under which it is proceeding. (*City of Long Beach* v. *Lisenby,* 175 Cal. 575 [166 Pac. 333]; *People* v. *City of Long Beach,* 155 Cal. 604 [102 Pac. 664].)

■ Assuming, but not holding, that the requirements of the ordinance were binding upon the contractors, we are of the opinion that under the curative provisions of sections 21 and 82 of the Improvement Act of 1911 (Stats. 1911, p. 743; Stats. 1911, p. 768; Stats. 1929, p. 1661) their failure to conform to and follow the provisions of the ordinance was an informality which would not defeat their right to their pay under their contract. It will be necessary for us to consider these two sections of the Improvement Act of 1911 in considering the second contention of respondent. The authorities hereafter cited are authority for our conclusion that the failure of the contractors to follow the provisions of the ordinance, if a defect, is an informality cured by these sections.

■ Respondent contends that petitioners' delay of eight days in the completion of their work, after the time limit specified in their contract, will defeat their right of recovery herein. Under many of the earlier decisions of the Supreme Court construing the provisions of local improvement acts of California, this contention of respondent finds support. However, in many of these local improvement acts the legislature has softened the rigor of these earlier decisions by the insertion of amendments containing curative provisions under which many of the defects which were formerly held fatal to the proceedings are now regarded as immaterial and unimportant informalities.

The curative provisions of the Improvement Act of 1911 are found in sections 21 (formerly 26) and 82 of the act. They are, in part, as follows:

"Section 21: No assessment, warrant, or diagram, and no proceedings prior to the assessment, shall be held invalid by any court for any error, informality, or other defect in the same, where the resolution of intention of the council to do the work has been actually published as herein provided. . . . "

"Section 82: This act shall be liberally construed to the end that its purposes may be effective. No error, irregular-

ity, informality, and no neglect or omission of any officer of the city, in any procedure taken hereunder, which does not directly affect the jurisdiction of the city council to order the improvement, shall avoid or invalidate such proceeding or any assessment for the cost of work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the city council as herein provided.''

In discussing the effect of section 82 in the case of *Rutledge* v. *City of Eureka,* 195 Cal. 404 [234 Pac. 82, 86], it was said (quoting the section):

''This is a most comprehensive curative provision. It is more than a curative act. A curative act is retrospective. Here the same statute which prescribes certain requirements provides that failure to comply with such requirements shall not avoid the assessment. It is competent to provide in the law itself that a disregard of the provisions not essential to confer jurisdiction on the council to order the work may in turn be disregarded.''

These curative sections were also discussed in the case of *City Street Improvement Co.* v. *Watson,* 50 Cal. App. 687 [195 Pac. 967, 968], in which it was said:

'' 'In any proceeding designed to subject the property of an individual to the burden of tax or assessment, certain elements are essential to constitute compliance with the mandates of the state or federal Constitutions. It is agreed on all hands that no curative act can deprive a property owner of the right to resist a pretended assessment which, if enforced, would deprive him of his property without due process of law, or otherwise infringe his constitutional rights. But short of this, there is no more reason for denying to the statute before us than to that involved in the case of *Chase* v. *Trout,* 146 Cal. 350 [80 Pac. 81], the effect of foreclosing any attack based upon the failure to pursue regularly, or at all, those steps which the legislature was not bound to make a part of the statutory procedure. As is pointed out in *Chase* v. *Trout, supra,* the application of curative statutes is not to be determined solely by inquiring whether the steps omitted or defectively performed were ''jurisdictional''. The term ''jurisdictional'' has been used in various senses. The power to levy an assessment or impose a liability on private property is derived solely from the statute, and must

be exercised in the manner laid down in the statute. In this sense the jurisdiction of the board extends only to its right to act in the manner prescribed by the legislature. But with respect to any steps which are not constitutionally necessary the legislature may, in the very act which requires these ''jurisdictional'' steps to be taken, declare that unless that objection is made at a certain time or in a certain way, a failure to take these steps shall not affect the validity of the proceeding. This is the plain meaning of the holding in *Chase* v. *Trout, supra,* and we do not doubt that it is equally applicable here.' (*Imperial Land Co.* v. *Imperial Irr. Dist.*, 173 Cal. 660 [161 Pac. 113].)

''The foregoing was quoted with approval and applied to the 'curative' clause of the Improvement Act of 1911 in *Watkinson* v. *Vaughn,* 182 Cal. 55 [186 Pac. 753], and the court further said in pointing out the distinction between the so-called jurisdictional requirements called for by the statute and those jurisdictional requirements which are necessary for a compliance with 'due process of law': 'The very question of what defects in street improvement proceedings could be cured under such provisions as those of section 16 and section 66 of the present act was considered at length in *Chase* v. *Trout,* 146 Cal. 350 [80 Pac. 81]. The argument was thus made that no so-called ''jurisdictional defect could be thus cured''. In response, however, to this argument, the decision made a distinction between those so-called jurisdictional requirements which are called for by statute and those jurisdictional requirements which are necessary for a compliance with the constitutional provision that property shall not be taken without due process of law, or with other constitutional provisions, and it was held that while failure to comply with jurisdictional requirements of the latter class could not be cured, a failure to comply with those of the former class might be cured by action of the legislature, since the legislature had the right, in the first instance, to omit such requirements entirely. The discussion on this point is thus summed up in *Chase* v. *Trout, supra:* ''The correct proposition is, that as the legislature has power to devise any scheme for the assessment and levy of taxes for local improvement, provided such scheme includes such notice and opportunity for hearing to the owner of property taxed as will be sufficient to

constitute the due process of law required by the Constitution and otherwise complies with constitutional limitations and restrictions, so the legislature, by a curative clause in the law establishing the scheme, may provide that the issuance of a bond, or the execution of a deed, in the enforcement of such levy or assessment, shall be conclusive evidence of the regularity of the performance of all the required steps in the proceeding, excepting those that are necessary to constitute the due process of law, or to comply with any other constitutional prerequisite. As to all these other statutory steps or acts, the same power which prescribes them is competent to declare that their nonobservance shall not be fatal to the validity of the tax and that no inquiry may be made concerning them. This is substantially the effect of the statute in question here.'' ' (See, also, *Baird* v. *Monroe,* 150 Cal. 568 [89 Pac. 352]; *Board of Education* v. *Hyatt,* 152 Cal. 515 [93 Pac. 117]; *Wilcox* v. *Engebretsen,* 160 Cal. 292 [116 Pac. 750]; *Schaffer* v. *Smith,* 169 Cal. 764 [147 Pac. 976].) . . .

"From the overwhelming weight of authority from *Chase* v. *Trout* down, we are compelled to conclude that the assessment cannot now be declared to be invalid on account of the delay of two days in obtaining an extension of time in which to complete the work. It will be admitted that, leaving out of view the curative provisions of the act, the authorities are ample and uniform to the effect that the superintendent of streets and the city council have no power to revive or validate a dead contract, and that orders of extension made after the expiration of the time within which such contracts are by their terms to be performed are void. (Citing cases.) However, in none of these cases was the effect of the curative provisions of a statute such as are contained in the Improvement Act of 1911 given any consideration. These curative provisions were considered in the *Chase* v. *Trout* case, and that case has never since been questioned."

To the same effect are the cases of *Bou* v. *Willits,* 61 Cal. App. 32 [214 Pac. 519], and *In re East Bay etc. Water Bonds,* 196 Cal. 725 [239 Pac. 38].

A delay in securing an extension of time in which to complete the work until after the expiration of the time limit for completion specified in the contract was held an informality which was cured by the curative provisions of the

Improvement Act of 1911 in the cases of *Oakland Paving Co.* v. *Whittell Realty Co.*, 185 Cal. 113 [195 Pac. 1058], and *Tibbits Paving Co.* v. *Firth*, 53 Cal. App. 771 [200 Pac. 976].

If a delay in securing an extension of time within which to complete the contract is a mere informality which is cured by the curative provisions of the Improvement Act of 1911, we are of the opinion that the same rule should apply to the delay in the completion of the work where the contractor has in due time asked for an extension of time, which request had been denied by the governing body of the city.

The prayer of the petitioner is granted, and it is ordered that a peremptory writ of mandate be issued and directed to respondent, directing and requiring him to forthwith make and issue an assessment to cover the sum due for the work performed and specified in the contract herein referred to, including all incidental expenses, in conformity with the provisions of the Improvement Act of 1911, and to attach thereto a diagram exhibiting each street or street crossing, lane, alley, place or court, property or rights of way on which any work has been done, showing the relative location of each lot to the work done, numbered to correspond with the numbers of the assessments, together with a warrant to be attached thereto, all pursuant to the provisions of said Improvement Act of 1911, and to file said assessment, diagram, and warrant in the office of the city clerk of the city of Fresno, and to do and perform any and all acts necessary and proper under the provisions of the Improvement Act of 1911, to make a valid assessment and diagram and warrant for the payment for the work done and materials furnished and incidental expenses under the terms of the contract and proceedings hereinbefore referred to.

Barnard, P. J., and Jennings, J., concurred.